*MCCCXXXIII
 
 ORDER (1) GRANTING DEFENDANT’S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; (2) GRANTING IN PART DEFENDANT’S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; (3) DENYING DEFENDANT’S MOTION TO STRIKE; (4)DENYING IN PART PLAINTIFF’S MOTION TO TAKE JUDICIAL NOTICE; AND (5) GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT
 

 STIVEN, United States Magistrate Judge.
 

 I. INTRODUCTION
 

 The motions of Defendant Sprint Corporation to dismiss, Defendant Sprint PCS to dismiss and to strike, and of Plaintiff to take judicial notice were heard on December 16, 2002 at 2:00 p.m. in the above entitled court. The subject Rule 12 motion of Defendant Sprint Corporation was filed on October 9, 2002. The subject Rule 12 motions of Defendant Sprint PCS were also filed on October 9, 2002. Plaintiff submitted an opposition on December 2, 2002. Defendant Sprint Corporation and Defendant Sprint PCS each filed a reply on December 9, 2002. The subject motion of Plaintiff for the Court to Take Judicial Notice was filed on December 2, 2002. Defendant Sprint Corporation and Defendant Sprint PCS each filed objections on December 9, 2002. All motions were taken under submission after the December 16, 2002 hearing.
 

 II. BACKGROUND
 

 A. RELEVANT FACTUAL BACKGROUND
 

 Plaintiff is an individual, proceeding
 
 pro se,
 
 and originally filed this complaint as an adversary proceeding in a bankruptcy case. The instant case arises from a dispute between Plaintiff and Sprint PCS regarding Sprint PCS’s Equipment Replacement Program. Plaintiff purchased a wireless phone and began participating in the Program for a fee of $4 per month on or about December 16, 2000. Plaintiff alleges that, despite his payment of necessary fees to Sprint, Sprint customer service agents refused to replace his phone after it was damaged. Plaintiff exchanged the phone with the dealer under the dealer’s ninety-day exchange policy, paid an activation fee of $29.99 to activate the second phone, and demanded reimbursement from Sprint. Plaintiff alleges that six months later, the desktop battery charger for his phone became damaged. Plaintiff believed the charger was also covered under the warranty, but Sprint refused to replace it. Plaintiff purchased another desktop charger for $89.74.
 

 Plaintiff brings this action in tort, in part based upon violation of statutory duties under California Civil Code, including various California Consumer Protection Laws, and California Insurance Code. Plaintiff also sues under 15 U.S.C. § 1125 (the Lanham Act) and 18 U.S.C. § 1964 (RICO) for recovery of damages stemming from a pattern of fraud.
 

 According to Defendants, Plaintiffs alleged “actual damages” were substantially less than $500.00. Plaintiff has alleged thirteen counts in the First Amended Complaint, including the Lanham Act, fraud, false advertising, concealment, warranty law violations, California Insurance Code violations, failure to settle, malice and oppression, and RICO. Plaintiff seeks as damages $73,170 in compensatory damages, including recovery of his cost for increased medication, and no less than $2.25 million in punitive damages. Additionally, according to Defendants, Plaintiff erroneously named “Sprint PCS” as a defendant. Defendants contend that there is no separate entity by that name and that
 
 *MCCCXXXIV
 
 Sprint PCS is a “dba” of Sprint Spectrum L.P. and of Sprint Telephony PCS L.P., both of which are indirect, wholly owned subsidiaries of Sprint Corporation.
 

 B. PROCEDURAL BACKGROUND
 

 Plaintiff filed this complaint as an adversary proceeding in his bankruptcy case on August 21, 2001. The original complaint alleged false advertising and RICO violations. The case was transferred to the United States District Court for the Southern District of California on January 8, 2002. Plaintiff filed a motion for summary judgment on January 24, 2002, together with motions for leave to join parties and for leave to file an amended complaint. On February 19, 2002, Plaintiff filed a motion for entry of default judgment. An order by District Judge Napoleon A. Jones, Jr. was filed on March 26, 2002, denying plaintiffs motion for leave to file an amended complaint,
 
 [1]
 
 denying the motion for summary judgment as moot, denying plaintiffs motion for default judgment against Sprint PCS, denying plaintiffs motion for leave to join parties, and dismissing Sprint Spectrum, L.P. from the action, based on voluntary dismissal by Plaintiff.
 
 [2]
 
 On May 23, 2002, Plaintiff filed a motion for an emergency temporary restraining order; the District Court denied Plaintiffs motion on May 28, 2002.
 

 On June 25, 2002, the District Court filed an order clarifying the status of Sprint Corporation. Plaintiffs original complaint was alleged against “Sprint PCS,” “Sprint Corporation,” and “Cox Communication PCS, L.P.” However, because none of those defendants had any connection to Plaintiffs claims, Sprint Spectrum answered the complaint, asserting itself as a Defendant on behalf of and in place of “the erroneously named” Sprint Corporation. Although Plaintiff voluntarily dismissed Sprint Spectrum, the Court found that this dismissal did not affect the status of Sprint Corporation as a party to this action.
 

 Plaintiff again filed a motion for leave to file an amended complaint on June 27, 2002. On September 4, 2002, Magistrate Judge James F. Stiven filed an order accepting the first amended complaint. On September 24, 2002, Judge Jones entered an order taking a motion for reconsideration under submission and taking the motion to clarify the earlier order under submission. On December 10, 2002, Judge Jones signed a stipulation and consent/order of reference, permitting the instant case to proceed before Magistrate Judge Stiven pursuant to 28 U.S.C. § 636(c). On December 11, 2002, Judge Jones denied as moot Plaintiffs motion for reconsideration of the motion to join parties, Plaintiffs motion for modification of the June 25, 2002 order, Plaintiffs motion for an order entering default judgment, Plaintiffs motion for entry of default judgment on claim 1, and Plaintiffs motion for bifurcation of claim 2.
 

 C. PRESENT DISPUTE
 

 Defendant Sprint Corporation moves to dismiss the First Amended Complaint for lack of personal jurisdiction. Defendant Sprint PCS moves to dismiss the First Amended Complaint for failure to state a claim and to strike. Plaintiff moves to take judicial notice of certain facts, cases, statements and admissions, findings, and public records.
 

 
 *MCCCXXXV
 

 III. STANDARDS OF LAW
 

 A.PERSONAL JURISDICTION
 
 (RULE 12(b)(2))
 

 A court may “exercise personal jurisdiction over a non-resident if jurisdiction is proper under California’s long-arm statute and if that exercise accords with federal constitutional due process principles.”
 
 Fireman’s Fund Ins. Co. v. National Bank of Cooperatives,
 
 103 F.3d 888, 893 (9th Cir.1996). As the Ninth Circuit has explained:
 

 California’s long-arm statute authorizes the court to exercise personal jurisdiction over a non-resident defendant on any basis not inconsistent with the California or federal Constitution. Cal.Code Civ. Pro. § 410.10. The statutory and constitutional requirements therefore merge into a single due process test.
 

 Id.
 
 at 893. “Due process requires only that ... [the defendant] have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ”
 
 International Shoe Co. v. Washington,
 
 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Where the court does not conduct an evidentiary hearing, a plaintiff need only establish a prima facie case of personal jurisdiction.
 
 Sher v. Johnson,
 
 911 F.2d 1357, 1361 (9th Cir.1990). There are two types of personal jurisdiction: general and specific.
 

 1.
 
 General Jurisdiction
 

 General personal jurisdiction enables a court to hear cases unrelated to the defendant’s forum activities if the defendant has “substantial” or “continuous and systematic” contacts with the forum state.
 
 Fields v. Sedgwick Associated Risks, Ltd.,
 
 796 F.2d 299, 301 (9th Cir.1986).
 

 2.
 
 Specific Jurisdiction
 

 The Ninth Circuit has a three-part test to determine whether specific personal jurisdiction comports with due process: “(1) the defendant must have done some act purposely to avail himself of the privilege of conducting activities in the forum; (2) the claim must arise out of the defendant’s forum-related activities; and (3) the exercise of jurisdiction must be reasonable.”
 
 Fields,
 
 796 F.2d at 302. Where the defendants present “a compelling case that jurisdiction would be unreasonable,” there is no need to address the first two prongs of the test.
 
 Id.
 
 at 302. On the other hand, “[o]nce purposeful availment has been established, the forum’s exercise of jurisdiction is presumptively reasonable. To rebut that presumption, a defendant must present a compelling case that the exercise of jurisdiction would in fact be unreasonable.”
 
 Roth v. Garcia Marquez,
 
 942 F.2d 617, 621-22 (9th Cir.1991).
 

 B. RULE 12(b)(6)
 

 A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.
 
 NL Industries, Inc. v. Kaplan,
 
 792 F.2d 896, 898 (9th Cir.1986);
 
 Parks School of Business, Inc. v. Symington,
 
 51 F.3d 1480, 1484 (9th Cir.1995). The court looks not at whether the plaintiff will “ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.”
 
 Scheuer v. Rhodes,
 
 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974),
 
 overruled on other grounds by Davis v. Scherer,
 
 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).
 

 C. MOTION TO STRIKE
 
 — RULE
 
 12(f)
 

 Upon a motion made by a party before responding to a pleading, the court
 
 *MCCCXXXVI
 
 may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.
 
 See
 
 Fed.R.Civ.P. 12(f). When ruling on a motion to strike, the court views the challenged pleadings in the light most favorable to the pleader.
 
 See Pillsbury, Madison & Sutro v. Lerner,
 
 31 F.3d 924, 928 (9th Cir.1994). However, motions to strike are not favored and “should be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.”
 
 Willson v. Cagle,
 
 711 F.Supp. 1521, 1534 (N.D.Cal.1988).
 

 D.
 
 JUDICIAL NOTICE
 

 The Federal Rules of Evidence provide that judicial notice may be taken of adjudicative facts.
 
 See
 
 Fed.R.Evid. 201(a). A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.
 
 See
 
 Fed.R.Evid. 201(b). The Notes of the Advisory Committee on Proposed Rules explain that “adjudicative facts” concern “immediate parties — who did what, where, when, how, and with what motive or intent. The Advisory notes to subdivision (b) indicate that the tradition, with respect to judicial notice of adjudicative facts, has been one of caution in requiring that the matter be beyond reasonable controversy. Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence, and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing.
 
 See, (e.g., United States v. Jones,
 
 29 F.3d 1549, 1553 (11th Cir.1994))
 
 (quoting
 
 Wright & Graham, Federal Practice & Procedure: Evidence § 5104 at 485).
 

 IV. ANALYSIS
 

 A. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.
 

 The first question is whether Sprint Corporation has voluntarily appeared in the instant matter and waived its right to contest
 
 in personam
 
 jurisdiction. Second, this Court must determine whether Sprint Corporation has sufficient minimum contacts with California to support personal jurisdiction. Next, the Court must determine whether the Plaintiff has met its burden of establishing jurisdiction.
 

 1.
 
 Waiver
 

 Under Federal Rule 12(h)(1), a party waives the defense of lack of personal jurisdiction if it is neither made by motion under this rule nor included in a responsive pleading or amendment thereof.
 
 See
 
 Fed.R.Civ.P. 12(h)(1)(B). Rule 12(h) does
 
 not
 
 create waiver in this case since Sprint Corporation did include a 12(b)(1) motion in its response to the First Amended Complaint. Moreover, Sprint Corporation did
 
 not
 
 make a general appearance in the bankruptcy adversary proceeding. Rather, the answer filed in the bankruptcy court was by Sprint Spectrum, L.P. (erroneously sued herein as Sprint Corporation). Moreover, Plaintiff moved for default judgment against Sprint Corporation, claiming Sprint Corporation had not answered. In an order dated March 26, 2002, Judge Jones
 
 denied
 
 Plaintiffs default motion on the grounds that Sprint Spectrum had effectively responded on behalf of Sprint Corporation. In an order dated June 25, 2002, Judge Jones found that Sprint Corporation
 
 was
 
 still a party to the lawsuit, because Plaintiffs voluntary dismissal of Sprint Spectrum did not affect the status of Sprint Corporation as a party, and the Court had not officially dismissed Sprint Corporation from the action. The Court,
 
 however,
 
 did
 
 not
 
 find that Sprint Corporation had made a general
 
 *MCCCXXXVII
 
 appearance or waived its right to challenge jurisdiction. In fact, in its order, the Court expressly left open Sprint Corporation’s opportunity to challenge the court’s personal jurisdiction.
 
 [3]
 

 This Court now finds that Sprint Corporation did
 
 not
 
 make a general appearance, did
 
 not
 
 consent to this Court’s jurisdiction by implication, and did
 
 not
 
 waive its right to challenge this Court’s personal jurisdiction.
 

 2.
 
 Minimum Contacts for General Personal Jurisdiction
 

 The question then is whether Sprint Corporation has sufficient minimum contacts with California to make it subject to personal jurisdiction. It is well-settled that a court must have sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice.”
 
 International Shoe Co.,
 
 326 U.S. at 316, 66 S.Ct. 154. General personal jurisdiction enables a court to hear cases unrelated to the defendant’s forum activities if the defendant has “substantial” or “continuous and systematic” contacts with the forum state.
 
 Fields,
 
 796 F.2d at 301. Specific personal jurisdiction may be asserted where the defendant has purposely availed him- or herself of the forum state, and the plaintiffs claim arises out of the defendant’s forum-related activities.
 
 See id.
 
 at 302 (defendant must have done some act purposely to avail himself of the privilege of conducting activities in the forum, the claim must arise out of the defendant’s forum-related activities, and the exercise of jurisdiction must be reasonable.)
 

 Defendant Sprint Corporation contends that it is a Kansas corporation with headquarters in Kansas, and its only operations is in Kansas. Defendant further contends that it is primarily a holding company, owning numerous subsidiary corporations and limited liability partnerships. Defendant Sprint Corporation claims that it does no actual business in California, has never done business in California, does not own property in California, does not have an office in California, and is not registered to conduct business in California. Defendant Sprint Corporation further contends that it does not have officers or employees in California. Such lack of contacts generally are held sufficient to successfully challenge the exercise of general jurisdiction.
 
 See Helicopteros Nacionales de Colombia, S.A. v. Hall,
 
 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (Texas did not have general jurisdiction over a foreign corporation whose only contacts were sending one of its officers to negotiate a contract, sending personnel to train in Texas, accepting checks drawn on a Texas bank, and purchasing equipment from a Texas firm). Thus, it appears that Defendant Sprint Corporation’s California-related activities are neither substantial nor continuous and systematic, so as to support general personal jurisdiction. Except as discussed below regarding Plaintiffs assertions regarding the activities of Sprint Corporation’s subsidiaries in California and Plaintiffs claims of alter ego, the evidence presented points to the conclusion that there is not a basis for finding general jurisdiction over Sprint Corporation in this Court.
 

 3.
 
 Specific Jurisdiction
 

 In determining whether this Court may assert specific jurisdiction, the first question here is whether the activities
 
 *MCCCXXXVIII
 
 of a wholly owned subsidiary, part of which are in California, are sufficient to allow California to assert specific personal jurisdiction over a non-resident parent based on the parent/subsidiary relationship and/or a theory of alter ego.
 
 [4]
 
 The Ninth Circuit has held that the existence of a parent-subsidiary relationship is insufficient, by itself, to establish personal jurisdiction.
 
 See AT & T v. Compagnie Bruxelles Lambert,
 
 94 F.3d 586, 590 (9th Cir.1996) (despite a subsidiary’s presence in the forum state, a parent’s own contacts cannot support personal jurisdiction where it conducts no business and maintains no offices in the state). In
 
 AT & T,
 
 the court also rejected the contention that the parent’s domination and control over the subsidiary constituted purposeful availment sufficient for specific jurisdiction.
 
 See id.
 
 at 591. The court considered whether plaintiff AT
 
 &
 
 T had shown that: 1) defendant GBL purposefully availed itself of the privilege- of conducting activities in California, thereby invoking the benefits and protections of its laws; 2) AT & T’s claims arise out of or relate to GBL’s California activities; and 3) the exercise of jurisdiction over GBL would be reasonable.
 
 See id.
 
 at 590
 
 (citing Ziegler v. Indian River County,
 
 64 F.3d 470, 473 (9th Cir.1995)). In that case, the court held that in order to succeed, AT
 
 &
 
 T must, but failed to, make out a prima facie case that the subsidiary, Keystone, was GBL’s alter ego.
 
 Id.
 
 at 591. The court therefore found that the circumstances relied upon to establish GBL’s domination over Keystone reflected no more than a normal parent-subsidiary relationship.
 
 Id.
 

 The
 
 AT & T
 
 court cited
 
 Flynt Distributing Company, Inc. v. Harvey,
 
 734 F.2d 1389, 1392 (9th Cir.1984), although it ultimately came to a different result. In
 
 Flynt,
 
 the Ninth Circuit relied on a finding of alter ego and concluded that the court had personal jurisdiction over numerous defendants who were New York corporations, partnerships, and individual residents and whose only contact with the forum state of California arose out of a subsidiary entity who had entered into the distribution agreement at issue.
 
 See id.
 
 The defendants argued that the agreement was insufficient as minimum contacts to support general or specific jurisdiction.
 
 See id.
 
 The
 
 Flynt
 
 court based the question of whether there was personal jurisdiction in a diversity case upon two inquiries: (1) whether a state statute of the forum conferred personal jurisdiction over the nonresident defendant and (2) whether the exercise of jurisdiction accorded with federal constitutional principles of due process.
 
 See id.
 
 The court found that the five corporate signatories to the distribution agreement with Plaintiff had purposefully availed themselves of the forum state’s jurisdiction. The court also asserted jurisdiction over thirteen other defendants who had not signed the agreement.
 
 See id.
 
 at 1393. The circuit court affirmed the district court’s finding that if the foreign corporate defendants were all the alter egos of their two common shareholders, and five of the corporations had submitted to the jurisdiction of the court, then jurisdiction could be asserted over
 
 all
 
 the corporate defendants.
 
 See id. (citing Sheard v. Superior Court,
 
 40 Cal.App.3d 207, 210, 114 Cal.Rptr. 743 (1974) (“[W]here a corporation is the
 
 alter ego
 
 of the stockholders so as to justify disregard of the corporate entity!,] jurisdiction over the corporation will support jurisdiction over the stockholders.”)). To apply the alter ego doctrine, a court must determine
 
 *MCCCXXXIX
 
 (1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice.
 
 See id.
 
 at 1393
 
 (citing Watson v. Commonwealth Insurance Co., 8
 
 Cal.2d 61, 68, 63 P.2d 295 (1936)). Only a prima facie showing of the alter ego relationship was required in
 
 Flynt. See id.
 
 The court therefore found an alter ego relationship sufficient for personal jurisdiction.
 

 In the instant case, there is a parent-subsidiary relationship, but there is not such unity of interest, i.e., alter ego, so as to disregard the corporate relationship. Defendant Sprint Corporation’s (the parent’s) contacts with California appear to be limited to its subsidiaries doing business in California, and the use of a common trademark and trade name with its numerous subsidiaries who are operating in California. Plaintiffs allegations appear to address the forum contacts between Plaintiff and Sprint PCS (Sprint Spectrum L.P. and/or Sprint Telephony PCS L.P.), both of which are independent, wholly owned subsidiaries of Sprint Corporation.
 
 [5]
 
 There is
 
 no
 
 indication that Defendant Sprint Corporation has failed to maintain the distinction between itself and its subsidiaries. Finally, the alter ego analysis does not generally apply to confer personal jurisdiction on a parent such as Defendant Sprint Corporation through its subsidiaries; rather, the alter-ego analysis generally applies to cases where a corporation is alleged to the be the alter ego of the stockholders. Thus, and for the reasons set out below, it does not appear that Defendant Sprint Corporation has sufficient minimum contacts with California, by purposeful availment or through an alter ego analysis, to support general or specific personal jurisdiction.
 

 4.
 
 Burden is on Plaintiff to Establish Alter Ego
 

 The plaintiff in an action has the burden of establishing jurisdiction.
 
 See AT & T,
 
 94 F.3d at 588 (9th Cir.1996),
 
 citing Fields,
 
 796 F.2d at 301. Where the motion may be decided on the basis of the pleadings and declarations, the plaintiff must establish a prima facie case of personal jurisdiction.
 
 See Fields,
 
 796 F.2d at 301. To establish a prima facie case, the plaintiff must produce admissible documentary evidence containing facts sufficient to support a finding of personal jurisdiction.
 
 See Sher v. Johnson,
 
 911 F.2d 1357, 1361 (9th Cir.1990).
 

 Additionally, to establish personal jurisdiction over the parent, the plaintiff must make a prima facie showing that the subsidiary is acting as the parent company’s alter ego.
 
 [6]
 

 See Flynt,
 
 734 F.2d at
 
 *MCCCXL
 
 1893. A subsidiary would be the parent’s alter ego only if the plaintiff made out a prima facie case: “(1) that there is such unity of interest and ownership that the separate personalities of [parent of subsidiary] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.”
 
 Id.
 
 at 1393. In
 
 Flynt,
 
 the plaintiff made a prima facie showing of an alter ego relationship by submitting affidavits indicating the two sole shareholders of the several defendant corporations had converted corporate assets for their own use, had dealt with the various corporations as if they were one, and had transferred assets among the corporations leaving some of them undercapi-talized.
 
 See id.
 
 at 1393-94.
 
 [7]
 

 Here, Plaintiff has not shown that Sprint PCS is the alter ego of Sprint Corporation. Moreover, there has not been a showing that there is anything more than a normal parent-subsidiary relationship. Plaintiff does not allege that Sprint Corporation asserts such domination and control over Sprint PCS to blur their separate identities; and even if Plaintiff did so allege, the
 
 AT & T
 
 court held that such control was insufficient to support a finding of purposeful availment as to the parent. In order to support this Court’s personal jurisdiction over Defendant Sprint Corporation, Plaintiff must make at least a prima facie showing of the alter ego relationship alleged to exist.
 

 Defendant contends that Plaintiffs only allegations relevant to jurisdiction are erroneous or unsupported facts and legal conclusions that disregard the organization of Sprint Corporation or vice versa and the relationship between the parties. Defendant argues that Plaintiff pleads no real facts to support the legal conclusion that Sprint PCS is the alter ego of Sprint Corporation and that Plaintiff must produce admissible evidence sufficient to establish personal jurisdiction. Defendant maintains and offers proof that Sprint Corporation is a separate and distinct legal entity from both Sprint Spectrum L.P. and Sprint Telephony PCS, L.P. (“Sprint PCS”). Defendant further maintains that each entity keeps separate books and records and separate bank accounts, as well as being responsible for its own day-to-day operations. Plaintiffs pleadings (and exhibits to his opposition) do not establish anything contrary.
 

 In pleading jurisdiction, for example, Plaintiff alleges that Sprint Corporation “owns and/or operates the only 100% digital personal communication services wireless network in the United States, including California.” FAC at ¶ 4. Plaintiff does not, however, provide sufficient evidence to support his conclusions about Defendants’ corporate structures and business operations. In seeking to support the existence of an alter-ego relationship, Plaintiff offers as evidence the Annual Report for 2001 for a different subsidiary, Sprint Communications Company, L.P., which lists Michael Hyde as Secretary.
 
 See
 
 Declaration of Bernt Yon Grabe in Support of Opposition to Motion to Dismiss for Lack of Personal Jurisdiction at ¶ 8. Defendant’s Motion includes a declaration from Mr. Hyde, which states that he is assistant Secretary of Sprint Corpora
 
 *MCCCXLI
 
 tion.
 
 Even assuming that
 
 this were the case,
 
 AT & T
 
 would not mandate a finding of personal jurisdiction, and
 
 Flynt
 
 is distinguishable based on the fact that a parent and subsidiary having common officers does
 
 not
 
 establish prima facie evidence of alter ego.
 

 Plaintiff also alleges that Sprint Corporation is “a Delaware corporation with offices in Westwood, Kansas.”
 
 See id.
 
 at ¶ 4. However, Defendant Sprint Corporation maintains that it is in fact “a duly organized, existing Kansas corporation which has its principal place of business in Kansas.” Hyde Declaration at ¶ 2.
 
 [8]
 
 Plaintiff further pleads: “According to statements made before a federal agency, Sprint owns PCS licenses to provide service to the entire United States population, including to residents of California.” FAC at ¶ 4. Plaintiff does not, however, indicate which federal agency Plaintiff refers to nor the content of statements allegedly made. It appears that the PCS licenses referred to are in fact held and used by various subsidiary corporations, such as Sprint PCS, to provide services in different service areas. This does not constitute prima facie evidence of alter ego. Plaintiff also alleges that “according to certified statements made before a federal agency, Sprint owns the trademark Sprint and the service mark Sprint PCS.” FAC at ¶ 5. Plaintiff refers simply to “Sprint,” without specifying Sprint Spectrum, Sprint Communications, Sprint Corporation, or Sprint Telephony. Defendant maintains and offers proof that the Sprint trademark is owned and registered by Sprint Communications, not Sprint Corporation.
 
 See
 
 Hyde Declaration at ¶ 3. Plaintiff counters that Sprint Corporation is the registered owner of the Sprint trademark, citing Sprint Corporation’s “10-K/A filing with the Securities and Exchange Commission,” but not providing such evidence.
 
 See
 
 Von Grabe Declaration at ¶ 34.
 
 [9]
 

 Plaintiff does not offer evidence sufficient to make a showing of personal jurisdiction. Additionally, Plaintiff does not offer evidence sufficient to make a prima facie case by demonstrating the existence of an alter-ego relationship between the parent and the subsidiaries.
 
 [10]
 
 The Ninth Circuit in
 
 Flynt
 
 required, in order to make a prima facie showing, that there is such unity of interest and ownership that the separate personalities of parent and subsidiary no longer exist and that failure to disregard their separate identities would result in fraud or injustice.
 
 See Flynt,
 
 734 F.2d at 1393. Here, Plaintiff does not make such a showing. Thus, it does not
 
 *MCCCXLII
 
 appear that personal jurisdiction over Defendant Sprint Corporation has been established.
 

 5.
 
 Sprint Corporation in Other Cases
 

 Where these same issues have been addressed by courts in other jurisdictions, personal jurisdiction has not been established over Sprint Corporation. In
 
 Aerotel v. Sprint Corporation,
 
 for example, plaintiff sought to assert personal jurisdiction over Sprint Corporation in New York by reason of its alleged management and control of Sprint Communications and Sprint Spectrum.
 
 See
 
 100 F.Supp.2d 189, 192 (S.D.N.Y.2000). Plaintiff Aerotel further argued that Sprint Corporation exercises operational and financial control over its subsidiaries.
 
 See id.
 
 at 193. Finally, plaintiff noted that Sprint Corporation presented its telecommunications services along with those of its subsidiaries to the marketplace under the common trade name “Sprint” without regard to its complex corporate structure.
 
 See id.
 

 The court nevertheless found that Aero-tel’s allegation that Sprint Communications and Sprint Spectrum are mere departments of Sprint Corporation was not sufficient to establish jurisdiction by a preponderance of the evidence.
 
 See id.
 
 at 194. Instead Aerotel’s allegations remained “conclusory despite the evidence of overlapping management and the fact that any doubts are to be resolved in the light most favorable to the plaintiff.”
 
 Id.
 
 The court denied Sprint Corporation’s motion to dismiss in order to permit Aerotel to take jurisdictional discovery, but permitted Sprint Corporation to later renew its motion to dismiss for lack of personal jurisdiction.
 
 Id.
 

 In another case,
 
 Phonometrics v. Northern Telecom,
 
 Sprint Corporation’s motion to dismiss for lack of subject matter jurisdiction, granted by the district court, was affirmed.
 
 See
 
 133 F.3d 1459, 1461 (Fed.Cir.1998). Plaintiff Phonometrics brought an action alleging patent infringement against Northern Telecom and United Telephone Company of Florida, later adding Sprint Corporation as an additional defendant.
 
 See id.
 
 at 1461-62. Sprint Corporation filed a motion to dismiss for lack of personal jurisdiction under Florida’s long-arm statute.
 
 [11]
 

 See id.
 
 at 1463. The district court held that Sprint Corporation “established that it does not control United and that it had no offices, employees, or agents in Florida itself, and neither manufactures nor sells equipment in Florida, nor otherwise conducts business there, and Phonometrics could provide no evidence to refute these facts.”
 
 Id.
 
 Accordingly, the district court concluded that Phonometrics failed to present a prima facie case and dismissed the claim against Sprint Corporation.
 
 See id.
 

 Here, that facts alleged by Plaintiff are not distinguishable from
 
 Aerotel
 
 or
 
 Pho-nometrics.
 
 In those cases, personal jurisdiction was not established over Sprint Corporation. Plaintiff does not plead additional facts to strengthen any basis for this Court’s grounds for asserting jurisdiction over Sprint Corporation. Thus, it does not appear that Plaintiff has met its burden for demonstrating that jurisdiction
 
 *MCCCXLIII
 
 over Sprint Corporation by this Court is proper.
 

 6.
 
 Use of Common Trade Name
 

 Plaintiff places significant weight on the fact that Sprint Corporation utilizes the trade name “Sprint,” holding itself out as such. The Court of Appeals for the Federal Circuit in
 
 Phonometrics
 
 addressed the use of “U.S. Sprint” as a trade name.
 
 See
 
 133 F.3d at 1463, n. 5. The district court in
 
 Aerotel
 
 similarly addressed the issue, as have subsequent courts citing
 
 Aerotel. See
 
 100 F.Supp.2d at 193. For example, in
 
 In re Ski Train Fire in Kaprun,
 
 Austria, plaintiffs argued that “Siemens Austria” was a mere department of “Siemens Germany” because the two companies hold themselves out to the world as a single entity and both use the name “Siemens” in their advertising.
 
 See
 
 230 F.Supp.2d 403, 411 (S.D.N.Y.2002). However, the New York district court noted that it had previously rejected this theory of jurisdiction.
 
 See id. (citing Aerotel,
 
 100 F.Supp.2d at 193) (use of a common trade name not a sufficient basis for establishing jurisdiction). Thus, in other cases the common use of a trade name-whether “Siemens” or “Sprint” itself-was not a sufficient basis for establishing personal jurisdiction.
 

 Here, Plaintiff seeks to establish that, through the use of a common trade name, Sprint Corporation has held itself out as the entity doing telecommunications business in California and entering into service contracts with people in California, including Plaintiff. However, Plaintiff does not provide evidence that Plaintiff entered into any such contracts with Sprint Corporation; rather the contracts in issue are in the name of Sprint PCS and use the trade name “Sprint PCS” and the common diamond logo.
 
 [12]
 
 As in similar cases involving use of a common trade name, Plaintiffs subjective interpretation and/or assumption or conclusion, without more, is not sufficient to establish personal jurisdiction over Sprint Corporation. Defendant’s Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(6) is therefore GRANTED. Plaintiffs complaint against Sprint Corporation is DISMISSED with prejudice.
 

 B. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MOTION TO STRIKE.
 

 Under Rule 12(b)(6), dismissal is proper where there is either a “lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable legal theory.”
 
 Balistreri v. Pacifica Police Dept.,
 
 901 F.2d 696, 699 (9th Cir.1988). A motion to dismiss under Rule 12(b)(6) will only be granted if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.”
 
 Gibson v. United States,
 
 781 F.2d 1334, 1337 (9th Cir.1986). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party.
 
 See Cassettari v. Nevada County, Cal.,
 
 824 F.2d 735, 737 (9th Cir.1987).
 

 Defendant Sprint PCS asks this Court to dismiss Plaintiffs claims, asserting that all of Plaintiffs claims fail to meet the requisite standard of law.
 
 [13]
 

 1.
 
 LanhamAct
 

 In count one of the First Amended Complaint, Plaintiff alleges that Defen
 
 *MCCCXLIV
 
 dant violated several sections of the Lan-ham Act.
 
 See
 
 15 U.S.C. § 1125. The Lanham Act creates a civil remedy against persons or entities who engage in “false designations of origin, false descriptions, and false representation in the advertising and sale of goods and services.”
 
 Waits v. Frito-Lay,
 
 978 F.2d 1093, 1106 (9th Cir.1992),
 
 citing Smith v. Montoro,
 
 648 F.2d 602, 603 (9th Cir.1981). The Act provides, in pertinent part, that:
 

 any person who ... uses in commerce any word, term, name, symbol, or device, or any combination thereof ... which is likely to cause confusion ... as to the affiliation, connection or association of such person with another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
 

 15 U.S.C. § 1125(a)(1).
 

 In addition, to maintain a claim under the Lanham Act, a party must have standing.
 
 See Waits,
 
 978 F.2d at 1107-1109. In order to have standing in a Lan-ham action, a plaintiff must allege a commercial or competitive injury.
 
 See Barrus v. Sylvania,
 
 55 F.3d 468, 469-470 (9th Cir.1995). While Ninth Circuit case law does not require “actual competition” between litigants in order for a plaintiff to have standing, courts have held that the plaintiff must have a “reasonable interest to be protected against false advertising.”
 
 Smith,
 
 648 F.2d at 608;
 
 see also Waits,
 
 978 F.2d at 1110;
 
 Barrus,
 
 55 F.3d at 470.
 

 Furthermore, case law has established that consumers do not meet the standing requirement for the Lanham Act.
 
 See Barrus,
 
 55 F.3d at 470. In
 
 Barrus,
 
 the plaintiffs filed a class action against a light bulb manufacturer and its various parent corporations on behalf of all consumers who purchased their light bulbs.
 
 See id.
 
 at 468. The plaintiffs alleged that the defendant corporations had engaged in false advertising in violation of § 1125(a)(1)(B). The court found that the plaintiffs had no standing under the Act, explaining that, as consumers, they could not allege any commercial or competitive injury.
 
 See id.
 
 at 470.
 

 In the instant case, Defendant argues that Plaintiffs attempts to allege Lanham Act violations, specifically sections 1125(a)(1)(A) and 1125(a)(1)(B), are “incurably deficient.”
 
 See
 
 Defendant’s Reply to Plaintiffs Opposition to Defendant’s Motion to Dismiss at 5-7. In an attempt to meet the standing requirements of the Act, Plaintiff alleges that he “is a competitor of Sprint in the area of 3G/GPS technologies ... and is the inventor named in a patent application covering a method for 3G/GPS-based traffic mapping.”
 
 See
 
 FAC at ¶ 17. However, the facts which Plaintiff puts forth in support of the Lanham claim appear to arise solely from his relationship with Sprint as a consumer. Specifically, Plaintiff alleges facts which speak to purchasing Sprint products through retail channels and communication with Sprint representatives through telephone numbers created for customer service with Sprint.
 
 See
 
 FAC at ¶ 20, 21, 24-30. Moreover, Plaintiff acknowledges that his allegations arise from his relationship with Sprint as a consumer rather than from a commercial or competitive interest.
 
 See id.
 
 at ¶ 86-87. Specifically, Plaintiff alleges that Sprint used its logo and trademark “to create mistake and confusion in plaintiff and other consumers.”
 
 See
 
 FAC ¶ 87.
 

 It appears that, the only means by which Plaintiff could gain standing under § 1125(a)(1)(A) and (B) would be by alleging facts indicating a commercial injury based on the deceptive use of a trademark or a commercial interest in services falsely identified by Sprint’s marks. Plaintiff does not allege such facts and, thus, lacks standing to bring a claim under the Lan-ham Act. For this reason, Defendant’s mo
 
 *MCCCXLV
 
 tion to dismiss Plaintiffs Lanham Act claims is GRANTED, with prejudice.
 

 2.
 
 Consumer Protection Claims
 

 In counts two through four of the First Amended Complaint, Plaintiff alleges that Defendant also violated several sections of the Consumers Legal Remedies Act.
 
 [14]
 
 California Civil Code § 1770, et seq, known as the Consumers Legal Remedies Act (“CLRA”), provides protection for consumers against unfair and deceptive business practices.
 
 See Bescos v. Bank of America,
 
 105 Cal.App.4th 378, 387, 129 Cal.Rptr.2d 423 (2003). The CLRA makes it unlawful for any person in a transaction to engage in certain practices, including:
 

 (1) passing off goods or services as those of another; (2) misrepresenting the source, sponsorship, approval, or certification of goods or services; (3) misrepresenting the affiliation, connection, or association with, or certification by, another...
 

 Cal. Civ.Code § 1770(a)(l)-(23)
 

 A violation of the CLRA may only be alleged by a consumer.
 
 See Ting v. AT&T,
 
 319 F.3d 1126, 1148 (9th Cir.2003.) A “consumer” is defined as “an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes.” Cal. Civ.Code § 1761(d). Such a consumer may bring a CLRA action in his individual capacity or on behalf of a group of similarly situated individuals.
 
 See Linder v. Thrifty Oil Co.,
 
 23 Cal.4th 429, 437, 97 Cal.Rptr.2d 179, 2 P.3d 27 (2000). As discussed in the preceding section, Plaintiff appears to have standing as a consumer to advance claims under the CLRA.
 

 An additional requirement for filing a claim under the CLRA is that the plaintiff meet certain notice standards prescribed in § 1782. This section provides the following:
 

 (a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:
 

 (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
 

 (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770 ... .The notice shall be in writing and shall be sent certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person’s principal place of business within California.
 

 Cal. Civ.Code § 1782.
 

 In
 
 Outboard Marine Corp. v. Superior Court,
 
 the California Court of Appeals, further articulated the notice requirements of § 1782.
 
 See 52
 
 Cal.App.3d 30, 40-41, 124 Cal.Rptr. 852 (1975). In that case, the plaintiff alleged adherence to § 1782 by drafting and mailing a certified demand letter to defendants requesting that they fix a defect.
 
 See id.
 
 The plaintiff argued that only substantial compliance is required to satisfy the requirements of § 1782.
 
 See id.
 
 Specifically, the plaintiff argued that if defendant had actual notice of the defects, a technical deficiency in form should not bar an action under § 1770 of the CLRA.
 
 See id.
 
 In addressing the plaintiffs claim, the court looked to the intent of the legislature, stating that the purpose of the § 1782 requirement, “is to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements,” and to, “facilitate pre-complaint settle-
 
 *MCCCXLVI
 
 merits of consumer actions wherever possible.”
 
 Id.
 
 at 40-41, 124 Cal.Rptr. 852. The court found that
 
 strict
 
 application of the requirement was necessary in order to achieve this goal.
 
 [15]
 

 See id.
 
 No contrary cases have been cited, nor have any been found by the Court.
 

 In the instant case, Defendant claims that Plaintiff failed to give proper notice under the CLRA. Defendant acknowledges that Plaintiff sent a letter entitled “Notice of Intent to File Lawsuit” dated July 27, 2001.
 
 See
 
 Defendant’s Memorandum of Points and Authorities in Support of Motion to Dismiss at 8. However, Defendant argues that this letter made no mention of § 1770 and that it was not delivered in compliance with statutory requirements.
 
 See id.
 

 Here, Plaintiff argues that the notice requirement of § 1782 was satisfied, as Defendant was given notice on several occasions of this litigation. Specifically, Plaintiff claims that it put Defendant on notice of the impending claim, sufficient to satisfy § 1782, by providing Defendant with the aforesaid July 27, 2001 letter and by subsequently providing documentary evidence in response to discovery requests, at least two attempts to amend the complaint, and by another letter submitted weeks before the First Amended Complaint was submitted in September 2002.
 
 See
 
 Plaintiffs Opposition to Defendant’s Motion to Dismiss at 22-3.
 

 As discussed above, § 1782 enumerates certain notice requirements which a plaintiff must meet in order to state such a claim.
 
 See
 
 Cal. Civ.Code § 1782. According to the statutory language, the plaintiff must, thirty days prior to commencing a CLRA action for damages, send the defendant, by certified or registered mail, a notice and demand letter.
 
 See id.
 
 The letter must identify the particular § 1770 violations that the plaintiff is alleging and demand that the defendant correct those violations.
 
 See id.
 
 Here, Plaintiff failed to meet this notice requirement. Plaintiff did not allege in the First Amended Complaint that it had given Defendant proper notice under the CLRA. Furthermore, the correspondence, which Plaintiff argues is sufficient under the Act, was not timely, was not delivered in the proper fashion, and made no mention of § 1770 or any specific violations thereof.
 
 See
 
 Exhibit A to the Declaration of Hillary Booth in Support of Motion to Dismiss. The other forms of “notice,” all part of the post-complaint litigation process, do not satisfy the requirements of § 1782. As such, Plaintiffs actions do not constitute sufficient “notice” under § 1782 of the CLRA, and this Court FINDS, therefore, that Plaintiff failed to sufficiently state a claim under CLRA and thus GRANTS Defendant’s Motion to Dismiss the several causes of action under the CLRA,
 
 [16]
 
 with prejudice.
 

 3.
 
 Fraud Under Civil Code §
 
 1709
 
 [17]
 

 In counts one through four and eleven, Plaintiff further alleges fraudulent
 
 *MCCCXLVII
 
 acts on behalf of Defendant, seeking damages under California Civil Code § 1709.
 
 [18]
 
 These alleged acts include: advertising with intent not to sell as advertised; misrepresentation of benefits or rights conferred; concealment of unconscionable contract clause; and failure to disclose under a theory of service contract.
 
 See
 
 FAC at ¶ 87-90, and 97.
 

 California Civil Code § 1709 imposes liability on those who engage in fraud stating, “one who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers.” Cal. Civ.Code § 1709. In order to establish a cause of action for fraud, a plaintiff must plead and prove all the elements of fraud, namely: (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage.
 
 See Conrad v. Bank of America,
 
 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996). Furthermore, when pleading claims amounting to fraud, a plaintiff must satisfy the demands of Rule 9(b) of the Federal Rules of Civil Procedure, which states that, “in all aver-ments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.” Fed. R.Civ.P. 9. General pleading of the legal conclusion of fraud is insufficient.
 
 See Conrad,
 
 45 Cal.App.4th at 156, 53 Cal.Rptr.2d 336. Courts have explained this rule to require that claims of fraud include the “who, what, when, where, and how” of the alleged misconduct.”
 
 Cooper v. Pickett,
 
 137 F.3d 616, 627 (9th Cir.1997). Another court has stated that pleading fraud necessitates pleading facts that “show how, when, where, to whom, and by what means the representations were tendered.”
 
 Lazar v. Superior Court (Rykoff-Sexton, Inc.),
 
 12 Cal.4th 631, 645, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996). Such claims must be “specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge.”
 
 Vess v. Ciba-Geigy Corp. USA,
 
 317 F.3d 1097, 1108 (9th Cir.2003).
 

 In the instant case, it appears that Plaintiff has adequately met the pleading requirements for fraud. While it is true that Plaintiff alleges several “misrepresentations” or “omissions” on the part of Defendant, and that these allegations are, in large measure, general and vague, Plaintiff
 
 *MCCCXLVIII
 

 does
 
 make sufficiently particular allegations in his FAC to comport with the pleading requirements of Rule 9(b).
 

 Specifically, in Plaintiffs FAC at ¶ s 18, 19, 22, 24, 25, 40, 42, and 58, it is alleged that in or about November 2000, in fliers and other advertising and promotional materials,
 
 [19]
 
 Defendant made specific material representations or omissions regarding its products, service plan, and insurance policy. Further, in Plaintiffs FAC in ¶8 19, 22, 25, 40, 42, and 58, Plaintiff alleges that such representations and/or omissions were made with the intent not to perform and to induce Plaintiff, as a consumer, to rely and to enter into a contract. Further, ¶ s 20, 21, 27, and 39 of Plaintiffs FAC allege justifiable reliance by Plaintiff on the stated misrepresentations and/or omissions. Plaintiff alleges damages in ¶ s 19, 24, 25, and 28 of his FAC.
 

 These factual averments, taken together with the more general and somewhat con-clusory allegations found in counts one through four and eleven, (FAC ¶ s 87, 88, 89, and 90) are adequate to state a claim for fraud either based on the common law or based on Cal. Civ.Code § 1709.
 

 However,
 
 there is still a problem with Plaintiffs fraud allegations as pled. It appears that all of the charging allegations in counts one through four and eleven and in the several paragraphs referenced above (with factual averments) the party or entity alleged to have perpetrated the fraud is
 
 Sprint Corporation.
 
 Since this Order finds that this Court does not have personal jurisdiction over Sprint Corporation, the fraud counts can
 
 only
 
 be maintained if it is alleged that the party or entity responsible for the misrepresentations/omissions is a party or entity doing business in California; that is Sprint PCS (more correctly Sprint Telephony PCS, L.P. dba Sprint PCS).
 

 Therefore, while this court finds that Plaintiffs fraud allegations (based on common fraud or Civil Code § 1709 only) are sufficient to defeat Defendant’s motion to dismiss, those claims cannot be maintained against Sprint Corporation. Based upon what is alleged, and upon what appears in the several exhibits which have been submitted, such claims could be stated as to Sprint PCS, the party with whom Plaintiff actually dealt. Plaintiff, therefore, is GRANTED leave to amend his Complaint. Any such Second Amended Complaint may only assert claims against Sprint PCS (more properly Sprint Telephony PCS, L.P. dba Sprint PCS) and shall be limited to claims arising out of the Plaintiffs existing claims for fraud (based on common law or Cal. Civ.Code § 1709)
 
 only.
 

 Accordingly, as to the fraud allegations in counts one through four and eleven, as all claims appear to be stated against Sprint Corporation, Plaintiffs Motion to Dismiss is GRANTED, without prejudice. Plaintiff may file his Second Amended Complaint (as to Sprint PCS) consistent with this Order.
 

 4.
 
 Insurance Code Violations
 

 In counts five through ten of the First Amended Complaint, Plaintiff at
 
 *MCCCXLIX
 
 tempts to state claims for violations of California Insurance Code § 790.03.
 
 [20]
 

 See
 
 Cal. Ins.Code § 790.03; see
 
 also
 
 FAC at ¶ 91-96. In relevant part, § 790.03 defines unfair methods of competition in the
 
 business of insurance:
 

 (a) Making ... any ... statement misrepresenting the terms of any policy issued ... or the benefits or advantages promised thereby or ... using any name or title of any policy or class of policies misrepresenting the true nature thereof.... (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: (1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue. (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims.... (3) Failing to adopt and implement reasonable standards for the prompt investigation ... of claims arising under insurance policies.... (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims.... (6) Compelling insureds to institute litigation to recover amounts due under an insurance policy.... (12) Failing to settle claims promptly.... (13) Failing to provide promptly a reasonable explanation ... for the denial of a claim....
 

 Cal. Ins.Code § 790.03.
 

 The California Supreme Court has held that § 790.03 and similar provisions do not create a private cause of action.
 
 See Moradi-Shalal v. Fireman’s Fund Ins. Companies,
 
 46 Cal.3d 287, 304, 250 Cal.Rptr. 116, 758 P.2d 58 (1988)(holding that the section creates no private right of action for third-party insurers);
 
 see also Zephyr Park v. Superior Court,
 
 213 Cal.App.3d 833, 836-838, 262 Cal.Rptr. 106 (1989) (extending the
 
 Moradi-Shalal
 
 holding to all private causes of action whether by first or third party). Furthermore, since
 
 Moradi-Shalal,
 
 California courts have refused to allow plaintiffs to “plead-around” the case’s holding by characterizing an otherwise § 709.03 claim as one brought under another statute.
 
 See Rubin v. Green,
 
 4 Cal.4th 1187, 1201-1202, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993)(citing a several cases in which bad faith claims against insurers which would have been barred by
 
 Moradi-Shalal
 
 were not allowed to be resurrected under the unfair competition statute);
 
 see also Doctors’ Co. Ins. Services v. Superior Court,
 
 225 Cal.App.3d 1284, 1289, 275 Cal.Rptr. 674 (1990)(using
 
 Moradi-Shalal
 
 reasoning to find no cause of action where plaintiff based intentional infliction of emotional distress claim on insurer’s alleged violation of Cal. Ins.Code § 790.03);
 
 Lee v. Travelers Companies,
 
 205 Cal.App.3d 691, 694-695, 252 Cal.Rptr. 468 (1988).
 

 In the instant case, it appears that Plaintiffs allegations regarding Defendant’s violations of § 790.03 are fatally deficient. Plaintiff is a consumer and a private party and, as noted above, § 790.03 alone does not support a claim of liability against Defendant in favor of Plaintiff as no private right of action is created by the section.
 
 Moradi-Shalal,
 
 46 Cal.3d at 304, 250 Cal.Rptr. 116, 758 P.2d 58;
 
 see also Zephyr Park,
 
 213 Cal.App.3d at 836-838, 262 Cal.Rptr. 106. Yet, in counts five through ten Plaintiff contends that Defendant is liable for its alleged violations of this code under § 1708.
 
 [21]
 

 See
 
 FAC at
 
 *MCCCL
 
 ¶ 91-96. As Defendant observes, this is merely an improper attempt by Plaintiff to “bring in through the back door what he could not introduce by way of the front.” Defendant’s Reply to Plaintiffs Opposition to Defendant’s Motion to Dismiss at p. 9. The holdings of
 
 Moradi-Shalal
 
 and its progeny make clear that such attempts to “plead around” § 790.03 are prohibited under California law.
 
 See Moradi-Shalal,
 
 46 Cal.3d at 304, 250 Cal.Rptr. 116, 758 P.2d 58;
 
 see also Rubin,
 
 4 Cal.4th at 1201-1202, 17 Cal.Rptr.2d 828, 847 P.2d 1044;
 
 Doctors’ Co. Ins. Services v. Superior Court, 225
 
 Cal.App.3d 1284, 1289, 275 Cal.Rptr. 674 (1990);
 
 Lee,
 
 205 Cal.App.3d at 694-695, 252 Cal.Rptr. 468. Plaintiff fails to plead a cause of action under § 790.03 because neither that section nor the section Plaintiff proceeds under, § 1708, create or permit a private right of action. As such, this Court FINDS that Plaintiff fails to plead a cause of action regarding Defendant’s alleged violations of the California Insurance Code and California Civil Code § 1708 and therefore GRANTS Defendant’s motion to dismiss, with prejudice.
 

 5.
 
 The Song-Beverly Consumer Warranty Act
 
 (Service Contract)
 

 In count eleven, Plaintiff attempts to allege a claim based on a failure to disclose certain material information in a service contract. To the extent such allegations are an extension of Plaintiffs general fraud allegations from counts one through four, this is dealt with in ¶ IV(B)(3) of this Order at pages 28-32. To the extent Plaintiff is seeking to state a separate claim under § 1790 (the Song Beverly Consumer Warranty Act), the pleading is presently insufficient.
 
 [22]
 
 First of all, ¶ 97 of Plaintiffs FAC only references Cal. Civ.Code § 1794.4, which is simply a detailed description of what information is required to be included in a service contract. No remedy or right of action is provided in § 1794.4. Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief. Cal. Civ. Code § 1794. A buyer is “any individual who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods.” Cal. Civ.Code § 1791(b). Consumer goods is “any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables.” Cal. Civ.Code § 1791(a). A service contract is “a contract in writing to perform, for additional cost, over a fixed period of time or for a specified duration, services relating to the maintenance, replacement, or repair of a consumer product.” Cal. Civ.Code § 1791(o). If Plaintiff intends to assert a separate count under § 1794, Plaintiff must so state in his Second Amended Complaint and specifically plead what specific requirements of § 1794.4 or other provision of the Song Beverly Act were not complied with and what damages were suffered by such omissions. Accordingly, Defendants’ Motion to Dismiss count 11 is GRANTED, without prejudice. Any such claim asserted in Plaintiffs Second Amended Complaint must be consistent with this Order.
 

 6.
 
 Punitive Damages
 

 In Count 12, Plaintiff asks this Court to grant him punitive damages.
 
 See
 
 FAC at ¶ 98-101. It is well settled that, under California law, a plaintiff may not recover punitive damages for breach of an
 
 *MCCCLI
 
 obligation arising out of a contract.
 
 See
 
 Cal. Civ.Code § 3294;
 
 In re Cantrell,
 
 329 F.3d 1119, 1125 (9th Cir.2003). Furthermore, a plaintiff is not eligible for punitive damages unless the underlying claims for fraud, oppression or malice are proven by clear and convincing evidence.
 
 See
 
 Cal. Civ.Code § 3294. While Plaintiff attempts to plead claims in tort (see discussion at pages 29 to 32
 
 supra),
 
 the crux of the First Amended Complaint arises under Defendant’s alleged breach of a service plan contract (see discussion at pages 35 to 36 above). Consequently, Defendant’s motion to dismiss Plaintiffs claims in count twelve is GRANTED, without prejudice.
 
 [23]
 

 7.
 
 RICO Claims
 

 In count thirteen of the First Amended Complaint, Plaintiff seeks relief under 18 U.S.C. § 1962(b), (c) and (d) for violations of the Racketeer Influenced and Corrupt Organization Act (“RICO”), based on alleged mail and wire fraud.
 
 See
 
 FAC at ¶ 102-106. RICO provides that:
 

 (b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain ... any interest in or control of any enterprise which is engaged in ... interstate ... commerce, (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in ... interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs through a pattern of racketeering activity .... (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.
 

 18 U.S.C. § 1962.
 

 In order to state a civil claim for a RICO violation, a plaintiff must allege each of the following elements: (1) conduct, (2) of an enterprise, (3) though a pattern (4) of racketeering activity.
 
 See Sedima, S.P.R.L. v. Imrex Co.,
 
 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). A plaintiffs claim will fail unless each of these is properly pleaded.
 
 See id.
 

 Section 1961 of RICO defines an “enterprise” as, “including] any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity.” 18 U.S.C. § 1960(4). In
 
 Cedric Kushner Promotions, Ltd. v. King,
 
 the Supreme Court stated that the language of RICO, “foresees two separate entities, a ‘person’ and a distinct ‘enterprise.’ ” 533 U.S. 158, 160, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001). Furthermore, to be considered an enterprise for purposes of a RICO claim, any group or entity, which together constitute the enterprise, must each exist independently from the racketeering activity in which it engages.
 
 See Simon v. Value Behavioral Health, Inc.,
 
 208 F.3d 1073, 1083 (9th Cir.2000). That is, each group or entity must have a “structure for making decisions and controlling the affairs of the group on an ongoing, rather than an ad hoc basis.”
 
 See United States v. Turkette,
 
 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981);
 
 see also Chang v. Chen,
 
 80 F.3d 1293, 1299 (9th Cir.1996);
 
 Simon,
 
 208 F.3d at 1083. To this end, a plaintiff must allege facts which show that the group or enterprise has some function wholly unrelated to the racketeering activity.
 
 See id.
 

 The RICO Act prohibits the acquisition of an enterprise through racketeering activity, the association with an enterprise engaged in racketeering activity, and conspiring to do either of the for
 
 *MCCCLII
 
 mer. 18 U.S.C. § 1962(b-d);
 
 Simon,
 
 208 F.3d at 1083. In order to successfully establish the enterprise element of a RICO violation, a plaintiff must allege that the defendant was a person who either acquired an enterprise, associated with an enterprise, or conspired with another to acquire or associate with an enterprise.
 
 Id.
 
 But, “a group whose members collectively engage in an illegal act, in-and-of-itself, does not constitute an ‘enterprise’ for the purposes of RICO.”
 
 Id.
 

 In the instant case, Plaintiff fails to properly plead the enterprise element of a RICO claim. Plaintiff alleges that “executive William T. Esrey, a manager of Sprint, along with other ‘executives’ ” comprised a RICO enterprise distinct from Sprint. FAC at ¶ 49. Alternatively, Plaintiff argues that the “executives” managed personnel acting under cover of Sprint PCS which is a RICO enterprise distinct from Sprint.
 
 [24]
 

 Id.
 
 Plaintiff alleges that the executives are an enterprise distinct from Sprint because they “agree[d] to commit, or instruct to commit ... or agree[d] to facilitate ... mail and wire fraud ... in furtherance of an open ended pattern of racketeering activity.”
 
 Id.
 
 Presumably, Sprint is meant to be the “person” associated with, acquiring, or conspiring to associate with or acquire the “executives” ’ enterprise. In the alternative, Plaintiff alleges that the “executives manage Sprint PCS, which is acting as an enterprise ...” FAC at ¶ 104. In both paragraphs, Plaintiff appears to be alleging that the “executives” qualify as an enterprise because they have an agreement to perform or assist in the performance of acts amounting to mail and wire fraud.
 

 This claim is terminally flawed because it does not allege the structure and alternative purpose aspects required for an enterprise. As noted above, an enterprise must exist for some purpose other than for the racketeering activity alleged.
 
 See Simon,
 
 208 F.3d at 1083. As the court observed in
 
 Simon,
 
 “a group whose members collectively engage in an illegal act, in-and-of-itself, does not constitute an enterprise for the purposes of RICO.”
 
 Id.
 
 According to
 
 Cedric,
 
 an enterprise is not simply the same “person” referred to by a different name.
 
 Cedric,
 
 533 U.S. at 161, 121 S.Ct. 2087 (holding that a person acting as a president and sole shareholder of a corporation was a separate and distinct person from the corporation). Plaintiffs allegation of forming an agreement amongst themselves as executives of Sprint fails to establish that Sprint and the enterprise alleged to have been formed by the executives of Sprint were two separate and distinct entities. Here, Plaintiff fails to put forth facts which show that the “executives” ’ enterprise performs any functions, as an enterprise
 
 distinct
 
 from Sprint, other than the alleged racketeering activities. Plaintiff alleges that Sprint’s association with the group of executives that involved racketeering consisted of falsely describing goods and services, with the knowledge of and upon instruction by the group of executives, resulting in consumer reliance. FAC at ¶ s39-40. Plaintiff further alleges that the executives are all executives of Sprint or Sprint PCS. FAC at ¶ 14. Plaintiff does not, however, allege that the executives formed a group functioning together,
 
 beyond their contact as Sprint executives,
 
 that existed separately from this alleged racketeering activity. Consequently, the Plaintiff in the instant case does not allege in his Complaint the existence of an “enterprise” engaged in the requisite conduct of “other activities” separate from the alleged illegal conduct of
 
 *MCCCLIII
 
 Sprint Corporation. There appears in this case to be no basis for such allegations.
 

 As such, the Court FINDS that Plaintiff has failed to properly allege the “enterprise” element of its RICO claim. This Court also FINDS that Plaintiffs allegations regarding other elements of the RICO claim are similarly deficient. However, because
 
 each
 
 RICO element must be properly pleaded in order to state a claim, the Court declines to address the merits of these other elements. Consequently, Defendant’s motion to dismiss Plaintiffs RICO claims is GRANTED, with prejudice.
 

 D. MOTION TO STRIKE
 
 — RULE
 
 12(f)
 

 Defendant has also made a Motion to Strike under RULE 12(f). The motion seeks to strike ¶ (c) of Plaintiffs prayer which asserts a right to recovery “for mental, and physical pain and suffering [in] the sum of $75,000.”
 
 [25]
 
 Defendant argues that this case is a business dispute, not a personal injury action, and thus, personal injury (mental or physical) damages are not recoverable as a matter of law. Defendant, however, cites no applicable authority. While it is clear that damages for personal injury or emotional distress are not for claims arising out of fraud in the purchase and sale of property (Cal. Civ. Code § 3334), that does not appear to be the case for other claims of fraud. In fact, general damages for pain and suffering are recoverable under Cal. Civ.Code § 3333 in tort action for deceit.
 
 See,
 
 e.g.
 
 Sprague v. Frank J. Sanders Lincoln Mercury,
 
 120 Cal.App.3d 412, 174 Cal.Rptr. 608 (1981), b417 (1981); cf.
 
 Allstate Insurance Co. v. Miller,
 
 743 F.Supp. 723, 728 (N.D.Cal.1990). Since Plaintiffs cognizable claims here are stated to be under §§ 1709 and 3333, the prayer for pain and suffering damages may be proper. Accordingly, Defendants’ Motion to Strike is DENIED, without prejudice.
 

 D. JUDICIAL NOTICE
 

 Plaintiff brings a motion requesting that this Court take Judicial Notice of various facts. Judicial notice is a tool which the court and parties may use to establish certain facts without presenting evidence.
 
 See Castillo-Villagra v. I.N.S.,
 
 972 F.2d 1017, 1026 (9th Cir.1992). Under Federal Rule of Evidence 201(a), Federal Courts may take judicial notice of facts that are not subject to reasonable dispute because they are: (1) generally known within the territorial jurisdiction of the court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
 
 See
 
 Fed.R.Evid. 201(b). The effect of taking judicial notice under this rule is to, “preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed.”
 
 Jones,
 
 29 F.3d at 1553.
 

 Furthermore, the Ninth Circuit tends to be strict with its application of Rule 201(b).
 
 See Lussier v. Runyon,
 
 50 F.3d 1103, 1114 (9th Cir.1995). Courts continually decline to take notice of “facts” not commonly known which are related to extra-record evidence.
 
 See Lussier,
 
 50 F.3d at 1114 (comparing these assertions of general knowledge where judicial notice is appropriate to specific matters, such as benefits payments and the size of a disability retirement annuity, where it is not). Moreover, courts have found the taking of judicial notice to be inappropriate in matters requiring detailed or specific knowledge.
 
 See U.S. v. Mariscal,
 
 285 F.3d 1127, 1132 (9th Cir.2002) (refusing to take judicial
 
 *MCCCLIV
 
 notice of the effect of a driver’s performance on traffic at an intersection).
 

 In the instant case, Plaintiff requests that the Court take judicial notice of a multitude of assertions relating to: the use of the Sprint trademark; failure to disclose other parties; Sprint PCS common stock; Sprint being the alter ego of Sprint PCS; Sprint being the principle in an agency relationship; Sprint Corporation’s control over the PCS group; Sprint’s targeting of California residents; minimum contacts; Sprint’s not being solely a holding company; and Plaintiffs suffering from cardiovascular disease.
 
 See
 
 Plaintiffs First Request to Take Judicial Notice.
 

 It would be improper, at best, for this Court to take judicial notice of such assertions. Many of the “facts” Plaintiff would have this Court take notice of are not only disputed, they form the essence of the controversy at hand. Taking judicial notice of such assertions would have the effect of preventing Defendant from participating in the adversary process.
 
 See Jones,
 
 29 F.3d at 1553 (finding that judicial notice of a fact results in a directed verdict on that issue). It appears that Plaintiff misuses this Rule of Evidence to effectively circumvent Plaintiffs burden of proof and duty to litigate this case.
 

 Given the above analysis, this Court FINDS that the facts put forth by Plaintiff are inappropriate for judicial notice and the motion is, thus, DENIED.
 
 However,
 
 that does
 
 not
 
 mean that the many exhibits attached to Plaintiffs three requests to take judicial notice may not be found admissible as evidence, either in connection with this motion, or at trial. The Court has reviewed Exhibits A through AAA that have been submitted, and finds that many of them are appropriately filed as exhibits in connection with Defendants’ Motion to Dismiss, and they have been duly considered.
 
 [26]
 
 Other exhibits submitted do not have the requisite foundation laid to be considered at this time or are objectionable as hearsay or for other reasons. For the parties guidance, the following list shows which exhibits have been accepted and considered in connection with these motions and which have been rejected.
 
 [27]
 

 Exhibits
 

 A Accepted
 

 B Rejected
 

 C Rejected
 

 D Accepted
 

 E Accepted
 

 F Accepted
 

 G Rejected
 

 H Rejected
 

 I Rejected
 

 J Rejected
 

 K Rejected
 

 L Rejected
 

 M Rejected
 

 N Rejected
 

 O Rejected
 

 P Rejected
 

 Q Accepted
 

 R Accepted
 

 S Accepted
 

 T Accepted
 

 U Accepted
 

 V Rejected
 

 W Rejected ^
 

 X Rejected
 

 Y Rejected
 

 V Accepted
 

 AA Rejecte
 

 BB Accepte
 

 CC Accepted O
 

 DD Rejected Ü
 

 EE Accepted M
 

 
 *MCCCLV
 
 FF Accepted
 

 GG Accepted
 

 HH Rejected
 

 II Accepted
 

 JJ Rejected
 

 KK Accepted
 

 LL Accepted
 

 MM Accepted
 

 NN Accepted
 

 00 Rejected
 

 PP Accepted
 

 QQ Accepted
 

 RR Rejected
 

 SS Rejected
 

 TT Rejected
 

 UU Rejected
 

 W Rejected
 

 WW Rejected
 

 XX Rejected
 

 YY Accepted
 

 ZZ Rejected
 

 AAA Rejected
 

 V. CONCLUSION
 

 For the forgoing reasons, this Court hereby GRANTS Defendant’s motion to dismiss for lack of personal jurisdiction, GRANTS Defendant’s motion to dismiss for failure to state a claim, DENIES Defendant’s motion to strike, DENIES Plaintiffs motion to take judicial notice, and GRANTS Plaintiff leave to amend his complaint consistent with this Order. Any second amended complaint must be filed
 
 no later than October 20, 2003.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Plaintiff’s motion to amend sought to join several named individuals as defendants, but Judge Jones ruled that this Court does not have personal jurisdiction over the individual executive defendants.
 

 [2]
 

 . Judge Jones found that Sprint Spectrum L.P. had answered in Bankruptcy Court on behalf of itself and each of the "erroneously named defendants”.
 

 [3]
 

 . While various motions were pending regarding the June 25, 2002 Order, the parties stipulated to the filing of a First Amended Complaint, with Defendants’
 
 express
 
 reservation of the right to challenge personal jurisdiction; an order permitting the filing of the First Amended Complaint was entered on September 4, 2002.
 

 [4]
 

 . It is undisputed that Plaintiff here contracted, in California, with an entity known as Sprint PCS. Defendant asserts that Sprint PCS is presently only a dba for Sprint Telephony PCS, L.P., a subsidiary of Sprint Corporation, and therefore, the Court will treat Sprint PCS as a subsidiary of Sprint Corporation for purposes of this analysis.
 

 [5]
 

 . Defendant maintains that Sprint Corporation is a holding company for such entities as Sprint Spectrum L.P. and Sprint Telephony PCS, L.P.
 
 See
 
 Declaration of Michael T. Hyde in Support of Motion to Dismiss at ¶ 3-5. Defendant further maintains that Sprint Communications Company L.P. is another independent wholly owned subsidiary of Sprint Corporation and is in the business of providing and selling long distance telecommunications services and is not a defendant in the instant case.
 
 See id.
 
 at ¶ 3. Sprint PCS is a dba for Sprint Spectrum L.P. and/or Sprint Telephony PCS L.P. Defendant also maintains that Sprint Communications Company L.P. is the owner and registrant of the ‘'Sprint” name and red diamond logo, which are registered with the United States Patent and Trademark Office, and Sprint Communications Company licenses the use of the “Sprint” name and logo to the other entities.
 
 See id.
 
 ¶ 3. Neither Sprint Telephony nor Sprint Spectrum are authorized to act on behalf on Sprint Corporation in any manner or through any person.
 
 See id.
 
 at ¶ s6, 8.
 

 [6]
 

 . In his opposition to Defendant's motion, Plaintiff seems to argue that Sprint Corporation is the alter ego of Sprint PCS, but the analysis should properly be the other way
 
 *MCCCXL
 
 around; that is, that Sprint PCS is the alter ego of its shareholder parent, Sprint Corporation.
 

 [7]
 

 . By contrast, the
 
 AT & T
 
 court found the relationship in that case more similar to that between the parent and subsidiary as in
 
 Kramer Motors, Inc. v. British Leyland, Ltd.,
 
 628 F.2d 1175, 1177 (9th Cir.1980) (no alter ego relationship even though parent guaranteed loans for subsidiary, reviewed and approved subsidiary's major decisions, placed several of its own directors on subsidiary's board, and was closely involved in subsidiary's pricing decisions).
 

 [8]
 

 .Assistant Secretary of Sprint Corporation, Michael Hyde, further declares as follows:
 

 Sprint Corporation is primarily a holding company, and its only operations are in Kansas. Sprint Corporation is not registered to conduct business in the State of California, and it conducts no business in California. Sprint Corporation does not have, nor to my knowledge has it ever had, an office in California. Sprint Corporation does not own, and to my knowledge never has owned, property of any kind in California, and it is not registered in California as a foreign corporation. Sprint Corporation does not have a registered agent for service of process in California.
 

 Hyde Declaration at ¶ 2.
 

 [9]
 

 . By contrast,
 
 See
 
 Exhibit A to Plaintiffs First Request to Take Judicial Notice, Sprint PCS Service Plans brochure which carries the legend: ("Sprint and the diamond logo and all other Sprint Marks are trademarks
 
 of Sprint Communications Company, L.P.,
 
 used under license.")
 

 [10]
 

 . As discussed in ¶ IV(c) at pages 38-39,
 
 infra,
 
 much of the evidence submitted by Plaintiff by declaration and/or in his Motion to Take Judicial Notice, lacks proper foundation to be considered as evidence. A limited number of exhibits may be the subject of judicial notice and several others are sufficiently self-authenticating to be admissible for purposes of these motions. These documents have been considered.
 

 [11]
 

 . In a footnote, the circuit court noted the following: "At oral argument, there was substantial confusion as to the corporate entities potentially involved in this suit. It appears that Sprint Corporation, a Kansas corporation, is a holding company which merely owns stock in a number of subsidiaries. Only this entity has been served and named in this proceeding. We believe that ‘U.S. Sprint’ is a trade name. Sprint Communications Company L.P. appears to be an independent subsidiary operating in the state of Florida. In any event, it was neither named in the suit nor served with the complaint.” 133 F.3d at 1463, n. 5.
 

 [12]
 

 .
 
 See
 
 Exhibits A, F, Z to Plaintiff's First Request to Take Judicial Notice.
 

 [13]
 

 . Since Defendant's 12(b)(2) motion to dismiss is granted as to Sprint Corporation, the various 12(b)(6) motions are analyzed only as to the moving party, Sprint Telephony PCS, L.P., dba Sprint PCS.
 

 [14]
 

 . Plaintiffs CLRA causes of action are inconsistent with the Lanham Act causes of action. The CLRA requires that the plaintiff be a consumer, while, as stated above, the Lanham Act requires that the plaintiff
 
 not
 
 be a consumer.
 

 [15]
 

 . While the court in
 
 Outboard Marine Corp.
 
 found that the CLRA notice requirement should be strictly enforced, it ultimately held that the defendant had waived such notice by stating in a letter addressed to the plaintiff that it was treating an earlier letter sent by the plaintiff as “a preliminary notice and demand under California Civil Code 1782(a).” 52 Cal.App.3d at 40-41, 124 Cal.Rptr. 852.
 

 [16]
 

 . Since this Order finds that plaintiff cannot maintain a claim under § 1782, Plaintiff's several claims under Cal. Civ.Code § 1780(b), as a senior citizen, are likewise DISMISSED.
 

 [17]
 

 .The
 
 Outboard Marine Corp.
 
 court stated that the CLRA "provides the exclusive remedy for conduct falling within its purview.” 52 Cal.App.3d at 35, 124 Cal.Rptr. 852
 
 (citing Vasquez v. Superior Court, 4
 
 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 (1971)). However, the case that
 
 Outboard Marine Corp.
 
 relies on,
 
 Vasquez,
 
 was a class action where the California Supreme Court clearly stated:
 

 
 *MCCCXLVII
 
 ... the [CLRA] provides in section 1752 that its provisions are not exclusive, that the remedies provided therein shall be in addition to any other procedures or remedies provided for in any other law, and that nothing in the act shall limit any other statutory or any common law rights to bring class actions. However, class actions by consumers brought under section 1770 of the act (which lists certain unlawful deceptive practices) must be brought under the provisions of the act. The statute applies to suits filed on or after January 1, 1971.
 

 4 Cal.3d at 818, 484 P.2d 964.
 

 California Civil Code § 1752 provides as follows:
 

 The provisions of this title are not exclusive. The remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law.... If any act or practice proscribed under this title also constitutes a cause of action in common law or a violation of another statute, the consumer may assert such common law or statutory cause of action under the procedures and with the remedies provided for in such law.
 

 Thus, contrary to the conclusion drawn from
 
 Outboard. Marine Corp.
 
 at first glance, it does
 
 not
 
 appear that Cal. Civ.Code § 1770 is the exclusive remedy available to a consumer.
 

 [18]
 

 . In these counts, Plaintiff cites several code sections, including Cal. Civ.Code § 1709. The Court construes each of these counts as claims only under Cal. Civ.Code § 1709, or alternatively, as claims for common law fraud, even though not expressly pled.
 

 [19]
 

 . It is also true that the particularity requirements of Rule 9(b) dictate that where it is alleged that material misrepresentations/omissions were made in printed form, such as fliers, letter, advertising, or promotional materials, the pleadings should sufficiently identify these writings for Defendant to be informed of what is at issue. This may be done by identifying or attaching representative samples of these materials. Plaintiff appears to have done this in the many exhibits supplied to the Court in his several requests for the Court to take judicial notice. However, in his further amendment to this Complaint, Plaintiff must
 
 specifically identify
 
 which exhibits he is relying on as containing the alleged misrepresentations or omissions.
 

 [20]
 

 . Cal Ins.Code § 790 is also known as the Unfair Practices Act.
 

 [21]
 

 . California Civil Code § 1708 states: "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing on any of his or her rights.” Cal. Civ.Code § 1708. This section similarly does not create a private right of action.
 
 See Katzberg v. Regents of Univ. of Cal., 29
 
 Cal.4th 300, 327, 127 Cal.Rptr.2d 482, 58 P.3d 339 (2002).
 

 [22]
 

 . Defendant's memorandum in support of its motion to dismiss does not address any issue regarding any claim under Cal. Civ.Code § 1790.
 

 [23]
 

 . If Plaintiff seeks to assert punitive damages in his second Amended Complaint, any such claims must be shown by clear and convincing evidence to be based upon Defendant Sprint PCS’s fraudulent conduct.
 

 [24]
 

 . Plaintiff previously moved to name the "executives” in a RICO count, however, this Court denied his motion on March 26, 2002 due to lack of personal jurisdiction.
 

 [25]
 

 . Paragraphs 29 and 30 of the FAC detail Plaintiffs claims of physical and emotional pain and suffering.
 

 [26]
 

 . As the instant motions are motions to dismiss and generally exclude extrinsic evidence, the exhibits have been considered only as to the Rule (12)(b)(2) jurisdictional motion and with regard to the requirements of Rule 9(b) for specificity as to the fraud allegations.
 

 [27]
 

 . This listing is
 
 not
 
 a ruling on the admissibility at trial of any exhibit. Defendant reserves the right to object to admission of any exhibit, and Plaintiff reserves the right to lay a proper foundation for the admission of others.