Jennifer L. LASTER, et al., Plaintiffs,

v.

T–MOBILE USA, INC.,
et al., Defendants.

No. 05 CV 1167 DMS(AJB).

United States District Court,
S.D. California.

Nov. 30, 2005.

Matthew B. Butler, Nicholas and Butler, San Diego, CA, for Plaintiffs.

Michael Patrick McGinn, Stokes Lawrence, Seattle, WA, James C. Grant, Alison Lee Pivonka, Solomon Ward Seidenwurm and Smith, Steven T. Coopersmith, Duckor Spradling Metzger and Wynne, San Diego, CA, Shont E. Miller, Munger Tolles and Olson, Michele A. Powers, Weston Benshoof Rochefort Rubalcava and MacCuish, Los Angeles, CA, for Defendants.

**ORDER: (1) DENYING T–MOBILE AND CINGULAR WIRELESS' MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS; (2) GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' UCL AND FAL CLAIMS WITHOUT PREJUDICE; AND (3) GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLRA CLAIM FOR DAMAGES WITH PREJUDICE**

[Docs. Nos. 24, 28, 32, 36]

SABRAW, District Judge.

In this putative class action, Plaintiffs assert that Defendants—cellular phone companies and other entities involved with the sale of wireless telecommunication services—have engaged in the unfair and deceptive practice of charging consumers sales tax on the full retail value of cellular phones that were advertised as "free" or at substantial discounts, in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200, et. seq., and False Advertising Law ("FAL"), Cal. Bus. & Prof.Code § 17500, et. seq. In addition, based on these alleged violations, Plaintiffs seek damages and injunctive relief under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ.Code § 1770, et. seq.

Presently before the Court are two motions. First, Defendants T–Mobile USA, Inc. ("T–Mobile") and Cingular Wireless ("Cingular") have filed separate motions to compel Plaintiffs Jennifer L. Laster ("Laster") and Elizabeth Voorhies ("Voorhies") to arbitration, based on the arbitration clauses contained in their wireless service contracts. In addition, Defendants Verizon Wireless and Go Wireless, Inc. have filed a joint motion under Fed. R.Civ.P. 12(b)(6) to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") for failure to state a claim. Defendants T–Mobile and Cingular have joined that motion. On October 28, 2005, the Court heard oral argument on both motions. For the reasons discussed below, the Court denies T–Mobile and Cingular's motions to compel arbitration, and grants Defendants' collective motion to dismiss Plaintiffs' UCL and FAL claims without prejudice. Further, the Court grants Defendants' motion to dismiss Plaintiffs' CLRA damages claim with prejudice.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Defendants are engaged in the business of marketing and selling wireless telecommunications products, including cellular phones, accessories and service. These products are often sold as part of a "bundled" transaction, whereby the consumer receives a free or significantly discounted cellular phone, in exchange for agreeing to a wireless service contract for a specified duration; however, when Defendants offer the free or substantially discounted phone as part of a bundled transaction, they generally charge consumers sales tax (approximately 7.75%) based on the full retail value of the phone. Plaintiffs contend this practice is improper because a phone advertised as "free" should not include sales

tax, and a phone advertised at a substantial discount should include only the sales tax based on the phone's discounted price, rather than its full retail value.

On November 14, 2004, Voorhies entered into bundled transaction to obtain a new cellular phone and wireless service from Cingular, through its authorized agent, Go Wireless, in Poway, California. (Plaintiffs' FAC at ¶ 5.) In conjunction with the purchase of the service package, Voorhies was not charged any amount for the phone. (*Id.*) However, Defendants charged Voorhies a total of $10.31 in sales tax, based on the retail value of the phone. (*Id.*) At the time Voorhies entered into the transaction, she was provided with a copy of Cingular's one page "Wireless Service Agreement," which provides in its "Contract Provisions" section:

> This Agreement includes all the provisions of Cingular's current [T]erms of [S]ervice form FMS TC P 1104 0055 E, incorporated herein by reference, *including a binding arbitration clause.* It also includes and incorporates additional provisions contained in a separate rate plan or other brochure(s) describing the services to which I subscribed ("Rate Plan Brochure"). I agree to all these contract provisions.

(*See* Green Decl. at ¶¶ 6 & 7; Service Agreement, attached thereto) (emphasis added).

The Service Agreement further provides:

> I HAVE READ, UNDERSTAND, AND AGREE TO BE BOUND BY THIS AGREEMENT WITH ITS TERMS OF SERVICE AND RATE PLAN BROCHURE (including Changes to Terms and Rates, Limitation of Liability and *Arbitration* ).

(*See id.*) (emphasis added).

Voorhies also received at that time a copy of Cingular's "Terms of Service," which is a thirteen page document detailing the terms and conditions of Cingular's service. (Green Decl. at ¶ 10.) The Terms of Service, at page 10, includes a section entitled "Arbitration," which purports to waive the consumer's rights to (a) file claims in a court of law against Cingular, and (b) participate in a class action lawsuit against Cingular. Specifically, Cingular's arbitration clause provides:

> CINGULAR and you . . . agree to arbitrate all disputes and claims (including ones that already are the subject of litigation) arising out of or relating to this Agreement, or to any prior oral or written agreement, for Equipment or services between CINGULAR and you . . . . A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Intent to Arbitrate ("Notice") . . . . If we do not reach agreement to resolve the claim within 30 days after the Notice is received, you or Cingular may commence an arbitration proceeding. After Cingular receives notice at the Arbitration Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. . . . Cingular will pay all [American Arbitration Association] filing, administration and arbitrator fees for any arbitration initiated in accordance with the notice requirements above . . . . If the arbitrator grants relief to you that is equal to or greater than the value of your Demand, Cingular shall reimburse you for your reasonable attorneys' fees and expenses incurred in the arbitration . . . . You agree that, by entering into this Agreement, you and Cingular are waiving the right to trial by jury . . . . You and Cingular agree that YOU AND CINGULAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS IN-

DIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding.

(Cingular's Terms of Service at 10–12, attached to Green Decl.) (emphasis in original).

After Voorhies received copies of the Wireless Service Agreement and Terms of Service, she was—pursuant to Cingular's procedures for activation of cellular service—directed to call a number provided by Cingular for electronic activation of phone service. (Green Decl. at ¶ 11.) Voorhies was then prompted to execute an electronic signature by selecting the "Yes" option using her telephone keypad in response to the statement: "You agree to the terms as stated in the Wireless Service Agreement and Terms of Service." (*Id.* at ¶ 12.) If Voorhies did not respond "Yes" to this question, the system would automatically decline her service contract, and her phone would not be activated. (*Id.*) Voorhies agreed to the terms, and her phone was activated. (*Id.* at ¶ 13.)

On February 23, 2005, Laster entered into a bundled transaction with T–Mobile at its Mission Valley Center Store in San Diego, California, whereby she purchased a new phone and activated cellular service. (Plaintiffs' FAC at ¶ 3; Chang Decl. at ¶ 2.) When Laster entered into the transaction, she signed a one page Service Agreement which identified her plan rate and the equipment she purchased. (Chang Decl. at ¶ 2.) The Service Agreement neither mentioned arbitration nor incorporated by reference such a provision. After Laster signed the agreement, she received a one page transaction receipt which indicated, among other things, that while T–Mobile did not charge any amount for the phone, it was charging $28.22 for sales tax based on the full retail value of the phone. (*Id.*)

In addition to receiving a new phone, Laster was provided with a copy of T–Mobile's fifty-two page "Welcome Guide", which was placed inside the sealed box accompanying her new phone. (*Id.* at 3.) The Welcome Guide includes information about the phone's features and service, as well as the "Terms and Conditions" of its Service Agreement. Similar to Cingular, T–Mobile's Terms and Conditions includes an arbitration clause and waiver of class action participation. T–Mobile's arbitration clause provides:

Mandatory Arbitration; Dispute Resolution. YOU WILL FIRST NEGOTIATE WITH U.S. IN GOOD FAITH TO SETTLE ANY CLAIM OR DISPUTE BETWEEN YOU AND U.S. IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OR OUR PROVISION TO YOU OF GOODS, SERVICES OR UNITS ("CLAIM")..... IF YOU DO NOT REACH AGREEMENT WITH U.S. WITHIN 30 DAYS, INSTEAD OF SUING IN COURT, YOU AGREE THAT ANY CLAIM MUST BE SUBMITTED TO FINAL, BINDING ARBITRATION WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") .... You will pay your share of the arbitrator's fees except: (a) for claims less than $25, we will pay all arbitrator's fees and (b) for claims between $25 and $1000, you will pay $25 for the arbitrator's fee. You and we agree to pay our own other fees, costs and expenses including those for counsel, experts, and witnesses. YOU AND WE ACKNOWLEDGE AND AGREE THAT THIS SEC[TION] ... WAIVES ANY RIGHT TO A JURY TRIAL, OR PARTICIPATION AS A PLAINTIFF OR A CLASS MEMBER IN A CLASS ACTION.

(T–Mobile's Welcome Guide, § 4 (Terms and Conditions) at ¶¶ 3 & 4, attached as

Exhibit D to Chang Decl.) (emphasis in original). Laster alleges that before receiving T–Mobile's Welcome Guide, she was unaware of T–Mobile's arbitration clause. (Plaintiffs' Opposition to T–Mobile's Motion to Compel at 7.)

In May of 2005, Laster, Voorhies, and an additional named Plaintiff in this lawsuit, Andrew Thompson, each filed suits in the Superior Court of San Diego County. Subsequently, two of the cases were removed to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1711, *et. seq.* The third action against Defendants was dismissed without prejudice.

On August 12, 2005, Plaintiffs filed their FAC with this Court against Defendants. Plaintiffs allege for themselves and on behalf of all consumers who purchased a cellular phone as part of a bundled transaction, that Defendants' practice of advertising "free" or significantly discounted phones, while charging sales tax on the full retail value of the phones, constitutes misleading and unlawful business acts and practices under California's FAL, UCL and CLRA. Defendants challenge the FAC through their motions to compel arbitration and to dismiss. These motions are addressed below.

## II.

### DISCUSSION

### A. Motion to Compel Arbitration

#### 1. Legal Standard

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 1; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Congress intended courts to construe commerce as broadly as

possible. *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719 (9th Cir.1999). Pursuant to Section 2 of the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, the court must limit its inquiry to: (1) whether a valid agreement to arbitrate exists, and, if it does (2) whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000). Finally, a court interpreting an arbitration agreement must give due regard to the federal policy favoring arbitration; ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *AT & T Techs. Inc. v. Comm. Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("in the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.")

T–Mobile and Cingular contend Laster and Voorhies are bound by the terms of the arbitration agreements contained in their wireless service agreements, and therefore, this Court is not the proper forum to adjudicate their claims. Laster and Voorhies respond by arguing that the arbitration clauses are not enforceable against them because the subject provisions are unconscionable.

#### 2. Unconscionability

While federal policy favors arbitration agreements, federal courts rely on state law when addressing issues of con-

tract validity and enforceability. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir.2001). Thus, generally applicable contract defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening Section 2 of the FAA. *Ticknor*, 265 F.3d at 937 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). On a motion to compel arbitration, the trial court does not determine whether the contract as a whole is unconscionable. Instead, the court is limited to determining whether the arbitration clause itself is unconscionable. *See Gray v. Conseco, Inc.*, 2000 WL 1480273 (C.D.Cal. 2000).

 The unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. *See Armendariz v. Foundation Health Psychcare Services*, 24 Cal.4th 83, 113, 99 Cal.Rptr.2d 745, 6 P.3d 669 (Cal.2000). An adhesion contract is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* at 113, 99 Cal.Rptr.2d 745, 6 P.3d 669 (citation omitted). An adhesion contract is unconscionable when *both* procedural and substantive unconscionability are present. *Id.* at 114, 99 Cal.Rptr.2d 745, 6 P.3d 669. Procedural and substantive unconscionability, however, "need not be present in the same degree." *Id.* When great substantive unconscionability is present, less procedural unconscionability is required before the agreement will be invalidated. *Id.* Finally, a party challenging an arbitration agreement has the burden to prove both procedural and substantive unconscionability. *Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal.App.4th 1159, 1165, 22 Cal. Rptr.3d 189 (2004).

#### a. Procedural Unconscionability

 Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 491, 186 Cal.Rptr. 114 (1982). The procedural element of unconscionability focuses on two factors: oppression and surprise. *Id.* at 486, 186 Cal.Rptr. 114. The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party. *California Grocers Assn. v. Bank of America*, 22 Cal.App.4th 205, 214, 27 Cal.Rptr.2d 396 (1994). "Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." *Crippen*, 124 Cal. App.4th at 1165, 22 Cal.Rptr.3d 189 (citation omitted).

T–Mobile and Cingular do not dispute that the arbitration agreements between the parties were part of a non-negotiable form contract. Further, they do not challenge Plaintiffs' argument that a disparity in bargaining power exists between the parties. However, T–Mobile and Cingular argue that Laster and Voorhies cannot establish that the agreements are procedurally unconscionable due to "oppression" because they were not compelled to accept the terms contained in the service contracts; Laster and Voorhies were "able to choose from a host of wireless carriers offering services in a given market"—including carriers that do not insist on arbitration of disputes. (T–Mobile's Motion to Compel at 10–11; Cingular's Motion to Compel at 7.) Defendants cite *Morris v. Redwood Empire Bancorp*, 128 Cal. App.4th 1305, 1319–20, 27 Cal.Rptr.3d 797 (2005), for the proposition that "the 'op-

pression' factor of the procedural element of unconscionability may be defeated, if the complaining party has a meaningful choice of reasonably available sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable." (Cingular's Motion to Compel at 6.) The problem with this argument, however, is that the Ninth Circuit has rejected it.

In *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir.2003), the Ninth Circuit addressed this very argument. There, AT & T mailed a Consumer Services Agreement (CSA) to its customers along with the customer's monthly bill and other materials. The CSA purported to mandate arbitration of claims and bar customers from pursuing claims against AT & T on a classwide basis. AT & T argued its arbitration provision in the CSA was not procedurally unconscionable because "the third largest carrier, Verizon, had no arbitration agreement in [its] contract and ... consumers therefore had the option of rejecting AT & T's CSA and switching to a competitor." *Id.* at 1149.

The court in *Ting* dismissed the argument, first noting: "A contract *is* procedurally unconscionable if it is a contract of adhesion, *i.e.,* a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting,* 319 F.3d at 1148–49 (emphasis added) (citing *Flores v. Transamerica HomeFirst, Inc.,* 93 Cal.App.4th 846, 853, 113 Cal. Rptr.2d 376 (2001) (" 'A finding of a contract of adhesion is essentially a finding of

procedural unconscionability.' ")) In addition, the court in *Ting* held: "[E]ven assuming such alternatives matter under California law, *see Armendariz,* ... (rejecting contention that availability of alternative sources of supply affected the procedural unconscionability analysis), it nonetheless fails to overcome the district's court's well-founded conclusion that the CSA is a procedurally unconscionable contract [because AT & T imposed the CSA on its customers without opportunity for negotiation, modification, or waiver]." *Id.* Accordingly, *Ting* holds: (1) a contract of adhesion is procedurally unconscionable, and (2) even if a court were to consider the availability of alternative sources of supply, the court must evaluate the consumer's opportunity to negotiate the arbitration provision.

Here, it is undisputed Laster and Voorhies were presented with *non-negotiable* form contracts. They could either accept the contract with arbitration, or reject it. Under *Ting,* such "take it, or leave it" contracts are deemed to be procedurally unconscionable contracts of adhesion. The only question for this Court, therefore, is where on the continuum of procedural unconscionability do the subject agreements fall?[1]

With respect to T–Mobile, the one page Service Agreement Laster signed does *not* include any reference to arbitration or waiver of class action participation. Rather, Laster was theoretically notified of the arbitration clause through T–Mobile's fifty-two page "Welcome Guide", which was placed inside the sealed box containing her

---

**1.** Defendants cite *Crippen,* 124 Cal.App.4th at 1165, 22 Cal.Rptr.3d 189, for the proposition that "there is no general rule that a form contract used by party for many transactions is procedurally unconscionable. Rather, '[p]rocedural unconscionability focuses on the manner in which the disputed clause is pre-

sented to the party in the weaker bargaining position.' " (citation omitted). This holding, however, is contrary to the holding in *Ting.* Nonetheless, *Crippen's* holding remains relevant to the determination of the *level* of procedural unconscionability.

new phone. Laster claims she neither signed nor acknowledged the arbitration provision, because she never knew it existed. (Opposition to Motion to Compel at 7.) Nevertheless, T–Mobile contends Laster accepted the terms of arbitration by activating her phone because she "had time to review and understand" the Welcome Guide and its arbitration provision, and "she was allowed to return her phone and cancel her T–Mobile service within 14 days, with no penalty." (T–Mobile's Motion to Compel at 4.)

Under these circumstances, Laster had no meaningful opportunity to negotiate the terms of the service contract before purchasing the phone. In other words, she had no opportunity to switch to another competitor until *after* she purchased the phone. On this record, it appears Laster's ability to "negotiate" depended upon her ability to discover the arbitration provision on her own and then cancel her service within 14 days of purchasing and activating her phone. The manner in which the T–Mobile's arbitration provision was presented to Laster clearly suggests procedural unconscionability at a heightened level.

Cingular's arbitration clause, on the other hand, presents a closer call. In contrast to Laster, Voorhies was provided with both Cingular's Service Agreement (which specifically references arbitration) and its Terms of Service *at the time* she purchased the phone. As Cingular notes, "At that time, Voorhies had neither invested in a telephone nor become reliant upon the telephone number obtained when she entered into her agreement." (Cingular's Motion to Compel at 8.) In other words, Voorhies could, at that point, elect to "leave it" and go with a competitor, such as Verizon.

However, under *Ting*, Cingular nonetheless presented Voorhies with a take-it-or-leave-it form contract that is deemed to be adhesive and thereby, procedurally unconscionable. Similar to Laster, Voorhies had no real opportunity to "negotiate" the arbitration provision, as it was non-negotiable. She was, however, able to negotiate the transaction in the sense that she could at an early stage reject Cingular's terms and choose a competitor. As Cingular concedes, "At most, [under these circumstances] adhesiveness ... puts Cingular's contracts on the low end of the spectrum of procedural unconscionability." (Cingular's Motion to Compel at 7.) This Court would agree.

T–Mobile and Cingular next argue that Laster and Voorhies fail to show the "surprise" element of procedural unconscionability. In support, Defendants argue the terms of the arbitration agreements are adequately disclosed in their service contracts. (T–Mobile's Motion to Compel at 11; Cingular's Motion to Compel at 8.)

As noted, Laster was not made aware of the terms of the arbitration clause until after she had purchased the phone. The surprise element is therefore clearly established by Laster against T–Mobile.

Cingular argues, however, the "surprise" element is lacking because it "gave its arbitration provisions special prominence in its [Service] Agreement." (Cingular's Motion to Compel at 8.) While it is true Cingular's Service Agreement provides *notice* of arbitration, the agreement fails to mention the terms of arbitration or its classwide arbitration bar. In addition, the actual arbitration clause and class action waiver can only be determined by the customer by reading a separate document—specifically, pages ten through twelve of Cingular's thirteen page Terms of Service booklet. A modicum of surprise therefore exists under these circumstances.

In sum, for the reasons stated, T–Mobile and Cingular's arbitration provisions are procedurally unconscionable. To avoid enforcement, however, Laster and Voorhies also must establish substantive unconscionability.

### b. Substantive Unconscionability

Plaintiffs argue T–Mobile and Cingular's arbitration clauses are substantively unconscionable because they include a waiver of class action rights, citing the recent California Supreme Court decision in *Discover Bank v. Superior Court of Los Angeles,* 30 Cal.4th 148 (Cal.2005). Defendants counter that: (1) *Discover Bank* does not hold that all such arbitration provisions are unconscionable; (2) under *Discover Bank's* test for substantive unconscionability, Plaintiffs fail to show the arbitration provisions in dispute are unconscionable; and (3) even if this Court were to conclude that *Discover Bank* invalidates class action waivers in all consumer arbitration provisions, that holding would be preempted by Section 2 of the FAA.

In *Discover Bank,* defendant, a credit card company, sent an arbitration agreement (as an amendment to its existing customer service agreement) in a "bill stuffer" along with its customers' monthly invoices. The arbitration agreement included a waiver of classwide arbitration. Plaintiffs later initiated a class action lawsuit, and Discover Bank moved to compel arbitration. The California Supreme Court held that a waiver of classwide arbitration in a consumer contract of adhesion may be unconscionable under certain circumstances. Specifically, the court concluded:

> We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contract-

ing parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' (Civ.Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Discover Bank,* 30 Cal.4th at 162–63.

Accordingly, under *Discover Bank,* arbitration provisions that contain class action waivers are not *per se* unconscionable. Instead, a classwide arbitration bar is unconscionable only if two factors are present: (1) the class action waiver is contained in a consumer contract of adhesion, in which small amounts of damages are at issue; and (2) it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

Applying *Discover Bank's* two-prong test to the present facts leads to the conclusion that the arbitration provisions are substantively unconscionable. As noted, the arbitration clauses are contracts of adhesion because they are non-negotiable, presenting the consumer with only a take-it-or-leave-it option. Further, the dispute between the parties here involves individually small amounts of money—that is, the sales tax (approximately 7.75%) charged to the consumer, based on the retail value of a cellular phone. Thus, the first prong of *Discover Bank's* unconscionability test is satisfied.

T–Mobile argues Plaintiffs do not prevail under the second prong of *Discover Bank* because they fail to show T–Mobile deliberately cheated large numbers of consumers out of individually small sums of money. (T–Mobile's Motion to Compel at 16.) *Discover Bank*, however, does not require a plaintiff to show that a defendant *actually* carried out a scheme to cheat consumers out of money. Instead, *Discover Bank* holds that, "when it is *alleged* that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then ... the waiver becomes in practice the exemption of the party from responsibility for [its] own fraud, or willful injury to the person or property of another." *Discover Bank*, 30 Cal.4th at 162–63. (emphasis added). In essence, for a classwide litigation bar to be considered substantively unconscionable, a plaintiff need only *allege* that a defendant engaged in a scheme to cheat consumers out of small sums of money. Here, Plaintiffs' allege Defendants' practice of advertising "free" or substantially discounted phones, while charging consumers sales tax on the full retail value of the phone, constitutes a scheme to mislead consumers. Accordingly, their allegations are sufficient to satisfy the second prong of *Discover Bank's* substantive unconscionability test.

Cingular raises the additional argument that because its arbitration provision provides for the full payment of arbitration costs, as well as reasonable attorney's fees to potential plaintiffs, " 'the class-action waiver in its arbitration provision does not serve to insulate [it] from liability that otherwise would be imposed under California law' ... and hence is not substantively unconscionable under *Discover Bank*." (Cingular's Motion to Compel at 9–10,13.) Thus, Cingular essentially argues its arbitration provision allows potential plaintiffs to pursue claims against them under a system where the parties are on equal footing; because Cingular would pay a prevailing plaintiff's attorney's fees, it would have no incentive to defend itself in arbitration against a meritorious claim. (*Id.* at 12.)

The court in *Discover Bank* considered this argument, and rejected it, holding: "Nor are we persuaded by the rationale stated by some courts that the potential availability of attorney fees to the prevailing party in arbitration or litigation ameliorates the problem posed by such class action waivers .... There is no indication ... attorney fees are an adequate substitute for the class action or arbitration mechanism." [2] *Discover Bank*, 30 Cal.4th at 162.

Because T–Mobile and Cingular's service contracts are non-negotiable form contracts, involving an alleged scheme to cheat large numbers of consumers out of small sums of money, the arbitration clauses are substantively unconscionable. Fur-

---

**2.** The court in *Ting*, 319 F.3d 1126, which presaged *Discover Bank*, also was concerned with classwide bars because such bars potentially could convert arbitration into a one-sided forum favoring the stronger party. " 'Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope ... the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party *without accepting that forum for* itself.' " *Id.* at 1149 (citing *Armendariz*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669) (emphasis added). Because credit card companies typically do not sue their customers in class-action lawsuits, the *Ting* court concluded the classwide bar provision was manifestly one-sided and thus, substantively unconscionable. *Id.* at 1150. The *Ting* court's warning that such provisions may not be sufficiently bilateral, permeates *Discover Bank's* reasoning in its rejection of the classwide bar provision it was analyzing.

ther, because Laster and Voorhies have established the arbitration provisions are both procedurally and substantively unconscionable to a sufficient degree, the Court concludes the provisions are not enforceable against them.[3]

### 3. Preemption

 T–Mobile and Cingular argue, in the alternative, that should the Court find the arbitration clauses substantively unconscionable, this Court still must compel Laster and Voorhies to arbitration because the holding in *Discover Bank* is preempted by the FAA. Section 2 of the FAA provides that "[a]n agreement shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2. (emphasis added). Likewise, in *Perry v. Thomas,* 482 U.S. 483, 492–93 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), the United States Supreme Court held that "an agreement to arbitrate is valid, irrevocable, and enforceable, as a matter of federal law, save upon such grounds as exist at law or in equity for the revocation of *any* contract." (emphasis added.) T–Mobile and Cingular argue that "because the test set forth in *Discover Bank* is not a rule of general applicability given that it only applies to a limited subset of arbitration agreements and disputes"—the unconscionability test articulated in *Discover Bank* is preempted by § 2 of the FAA. (T–Mobile's Motion to Compel at 17; Cingular's Motion to Compel at 13.)

In *Discover Bank,* the court noted a determination that a classwide bar is unconscionable is not preempted by § 2 of the FAA, because such a determination involves principles of state law regarding the "validity, revocability, and enforceability of contracts generally[.]" *Discover*

*Bank,* 30 Cal.4th at 165. " 'Under section 2 of the FAA, a state court may refuse to enforce an arbitration agreement based on generally applicable contract defenses, such as fraud, duress, or unconscionability.' " *Id.* (citations omitted.) *See also Ting,* 319 F.3d at 1150, n. 15 ("Because unconscionability is a generally applicable contract defense, it may be applied to invalidate an arbitration agreement without contravening § 2 of the FAA."). The concept of unconscionability, therefore, may be employed as a principle of general applicability to invalidate an arbitration agreement without contravening § 2 of the FAA. Accordingly, the holding of *Discover Bank* is not preempted by § 2 of the FAA.

### B. Motion to Dismiss

#### 1. Legal Standard

 Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. Fed.R.Civ.P. 12(b)(6). *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See*

---

**3.** In light of the holding that Defendants' arbitration clauses are not enforceable, the Court

declines to address the arguments regarding the scope of the arbitration clauses.

*United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981). If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000) (citations and internal quotation marks omitted).

Defendants seek dismissal of Plaintiffs' FAC on four grounds: (1) Plaintiffs lack standing to bring their claims under California's UCL and FAL because they fail to adequately plead actual reliance and injury in fact; (2) Plaintiffs cannot allege false or deceptive advertising as a matter of law because consumers are expected to know that California law requires sales tax to be added to advertised items; (3) Plaintiffs' claim for restitution under the UCL and FAL fails because Defendants remitted the taxes collected from consumers to the State Board of Equalization; and (4) Plaintiffs' claim for damages under the CLRA should be dismissed because they fail to allege proper notice of their claim as required by California Civil Code § 1782. These arguments are addressed below.

## 2. Plaintiffs' UCL and FAL Claims

 Section 17200 of the California Business and Professions Code defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." Cal. Bus. & Prof. § 17200. By defining unfair competition to include any "unlawful ... business act or practice", the UCL permits violations of other laws to be treated as unfair competition that are independently actionable. *Cel–Tech Com-*

*munications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 180, 83 Cal. Rptr.2d 548, 973 P.2d 527 (Cal.1999). As such, any violation of the FAL necessarily violates the UCL. *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 210, 197 Cal.Rptr. 783, 673 P.2d 660 (Cal.1983).

 The FAL, which is codified at Section 17500, provides: "[i]t is unlawful for any person ... corporation or association, or any employee thereof ... to disseminate or cause to be so made or disseminated [,] any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised." Cal. Bus. & Prof. § 17500. California courts have noted that the FAL prohibits "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Leoni v. State Bar,* 39 Cal.3d 609, 626, 217 Cal.Rptr. 423, 704 P.2d 183 (Cal.1985).

Proposition 64, which was approved by California voters on November 2, 2004, amended certain provisions of the UCL and FAL. Before Proposition 64 passed, an uninjured private party could bring a UCL (or FAL) action on behalf of the "general public," and could obtain remedies on behalf of non-parties.

Proposition 64, however, amended Section 17204 of the UCL regarding private plaintiffs to read: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively ... by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof.Code § 17204. Section 17203, which was also amended by Proposition 64, now provides, with respect to representative private

plaintiffs: "Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure...." Cal. Bus. & Prof.Code § 17203.

Accordingly, after Proposition 64, a person seeking to represent claims on behalf of others must show that (1) she has suffered actual injury in fact, and (2) such injury occurred as a result of the defendant's alleged unfair competition or false advertising. For the reasons set forth below, Plaintiffs adequately allege injury in fact, but fail adequately to allege causation.

With respect to the first prong—injury in fact—Plaintiffs claim they entered into a bundled transaction with Defendants whereby they purchased both a phone and cellular service, and in doing so, were provided with a phone that was falsely advertised as "free" or substantially discounted, when in fact, they were required to pay the sales tax on the full retail value. (FAC at ¶¶ 23, 24, 25, 26 & 31.) Plaintiffs, in essence, contend putative class members were injured by Defendants' "bait-and-switch" practices; that is, consumers were lured in with advertisements for free or deeply discounted phones, yet once in the store, they were charged sales tax based on the full retail value of the phone. (FAC ¶¶ 26 & 31.) Plaintiffs further contend that if Defendants were faithful to their advertisements, they would have absorbed the tax. Instead, according to Plaintiffs,

Defendants illicitly shifted the tax burden to their customers ("fleeced" them) once such customers had taken the time and effort to respond to the deceptive advertisements. (*Id.*) Such allegations sufficiently allege an injury in fact.[4]

Plaintiffs, however, do not include *any* allegations in their FAC that they relied on Defendants' advertisements in entering into the transactions. While Plaintiffs meticulously describe the allegedly misleading advertisements (as later described in Plaintiffs' pleadings, a "bait-and-switch" leading to a "fleece"), none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction *as a result* of those advertisements.

The language of the UCL, as amended by Proposition 64, makes clear that a showing of causation is *required* as to each representative plaintiff. ("Actions for any relief ... shall be prosecuted exclusively ... by any person who has suffered *injury in fact* and has lost money or property *as a result* of such unfair competition." Cal. Bus. & Prof.Code § 17204 (emphasis added)). Because Plaintiffs fail to allege they actually relied on false or misleading advertisements, they fail to adequately allege causation as required by Proposition 64. Thus, under §§ 17203 and 17204, Plaintiffs lack standing to bring their UCL and FAL claims. Plaintiffs' claims are dismissed with leave to amend to address these deficiencies.[5]

---

4. For these reasons, the Court also rejects Defendants' argument that Plaintiffs cannot allege false or deceptive advertising as a matter of law. *See* Defendants' Motion to Dismiss at § IV.A, where Defendants argue they were both required to calculate sales tax on the full retail price of the phones irrespective of any promotional discount and authorized to collect it from consumers. This argument,

however, overlooks the essence of Plaintiffs' claim, *i.e.*, that Defendants engaged in "bait-and-switch" practices that deceptively and unfairly shifted the tax burden to consumers.

5. Defendants also argue Plaintiffs improperly "attempt to pass off as a UCL restitution claim that is effectively a damages claim for misrepresentation." (Defendants' Reply at 7.) "[Plaintiffs] argue that Defendants alleged

### 3. Plaintiffs' CLRA Claim

Defendants also seek dismissal of Plaintiffs' claim for damages under the CLRA because they failed to give proper notice to Defendants of their CLRA claim, as required by California Civil Code § 1782. Section 1782(a) provides:

> Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:
>
> > (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
> >
> > (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.
>
> The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California.

Cal. Civ.Code § 1782(a). Plaintiffs conceded that they failed to comply with the thirty day notice requirement set forth in § 1782, (see Plaintiffs' Opposition at 21), and through a separate filing have requested leave of court to "strike the premature allegation of damages without waiver and without prejudice based upon inadvertence and excusable neglect of counsel." (*Id.* at 22.) Thus, the only issue presented is whether the Court should dismiss Plaintiffs' CLRA damages claim with or without prejudice.

Defendants argue, based on *Von Grabe v. Sprint,* 312 F.Supp.2d 1285 (S.D.Cal. 2003), that Plaintiffs' failure to provide adequate notice compels dismissal of the CLRA claim for damages with prejudice. Plaintiffs respond, however, by arguing that the facts in this instance are distinguishable from *Von Grabe,* because there has been no attempt to mislead the court by including the claim for damages, as the plaintiff did in *Von Grabe;* rather, the inclusion of the request for damages was "mistakenly, prematurely included [in] the language requesting damages." (Plaintiffs' Opposition at 22.)

In *Von Grabe,* a cellular phone customer filed claims arising from an equipment replacement program fee charged by a cellular carrier. The plaintiff alleged, among other claims, a claim for damages under the CLRA. Ruling in the context of a motion to dismiss, the court dismissed the plaintiff's CLRA claim with prejudice because he failed to allege proper notice, as required by § 1782(a). In reaching its decision, the court relied on the California Court of Appeal opinion in *Outboard Marine Corp. v. Superior Court,* 52 Cal. App.3d 30, 124 Cal.Rptr. 852 (1975), which held that "*strict* application of the [notice] requirement was necessary" to achieve the goals of the CLRA. The court in *Outboard Marine* noted:

> *The purpose of the notice requirement of section 1782 is to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements.* The notice requirement commences the running of certain time constraints upon the manufacturer or vendor within which to com-

---

misrepresentations created an obligation to them to not charge taxes—which is either a contract or tort theory of *damages* for misrepresentation." (*Id.*) (emphasis added). Accordingly, since the UCL only permits claims for restitution, Defendants contend Plaintiffs'

fail to state a claim for restitution under the UCL. Restitution, however, may be based on unjust enrichment. Plaintiffs therefore sufficiently allege Defendants were unjustly enriched by improperly shifting sales taxes to consumers.

ply with the corrective provisions. The clear intent of the act is to provide and facilitate precomplaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished. *This clear purpose may only be accomplished by a literal application of the notice provisions.*

*Outboard Marine,* 52 Cal.App.3d at 40–41, 124 Cal.Rptr. 852 (emphasis added).

Notably, neither *Outboard Marine* nor *Von Grabe* drew a distinction between inadvertence or willful disregard of the notice requirements. Both courts held that a claim for damages under the CLRA requires *strict* compliance with the notice requirements set forth in § 1782. This Court agrees. Strict adherence to the statute's notice provision is required to accomplish the Act's goals of expeditious remediation before litigation. Because Plaintiffs failed to provide notice to Defendants pursuant to § 1782(a), their claim for damages under the CLRA must be dismissed with prejudice.[6]

This result is not changed by the fact that Plaintiffs also brought a claim under the CLRA for injunctive relief. While § 1782(d) authorizes the filing of an action for injunctive relief *without* first providing notice to the vendor, the statute further directs that such an action may not be converted into an action for damages unless the consumer first complies with the notice provisions of § 1782(a). Accordingly, § 1782 scrupulously prohibits any action for damages unless its notice provisions are met. As stated, the Legislative goals would be eviscerated if consumers were allowed to sue for damages without first providing the statutorily mandated period for remediation.

Plaintiffs' claim for damages is therefore dismissed with prejudice. Plaintiffs' claim for injunctive relief stands, pursuant to § 1782(d).

### III.

#### CONCLUSION AND ORDER

For these reasons, the Court denies Defendants T–Mobile and Cingular's motion to compel arbitration. In addition, the Court grants without prejudice Defendants' collective motion to dismiss Plaintiffs' claims under the UCL and FAL. Plaintiffs shall file a second amended complaint within 20 days of the date this Order is stamped filed addressing the deficiencies noted herein. Finally, Defendants' motion to dismiss Plaintiffs' claims for damages under the CLRA is granted with prejudice.

**IT IS SO ORDERED.**

---

6. This ruling, as with all rulings herein, applies only to the named Plaintiffs.